PETER F. WAHL

*v.*

JOHN LAUBERSHEIMER.

*Opinion filed October 24, 1898.*

1. TRESPASS—*land need not be enclosed with fence to enable owner to maintain trespass.* Any class of improvements or acts of dominion that indicate to neighboring residents who has the exclusive control of the land will constitute possession to the extent of the paper title under which such party entered, so as to enable him to maintain trespass for any injury to the estate.

2. SAME—*when plat is admissible in action of trespass quare clausum fregit.* A plat of the lot described in the declaration, showing the location of the division fence, is not improperly admitted in an action of trespass *quare clausum fregit,* where the party who made the same testifies that it is accurate in measurements and correct.

3. SAME—*entry not resulting in open breach of peace is not necessarily peaceable.* Where one entitled to the possession of land enters, as against another claimant, in a violent and tumultuous manner, such as would be likely to cause a breach of the peace, the fact it did not so result does not make the entry peaceable and lawful.

APPEAL from the Circuit Court of Hancock county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

MILLER & WILLIAMS, and SCOFIELD, O'HARRA & SCOFIELD, for appellant.

HOOKER, PLANTZ & HARTZELL, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an action in trespass *quare clausum fregit,* begun by John Laubersheimer in the circuit court of Hancock county, against Peter F. Wahl, the appellant here, claiming damages to the amount of $500. The declaration alleged that the defendant "with force and arms broke and entered the plaintiff's close in Nauvoo, Hancock county, Illinois, being the west 35 feet of the east 150¾₂ feet of lot 4, block 19, Wells' addition to Nauvoo, and broke and pulled down certain fence-posts there standing," etc. Defendant pleaded the general issue and

two special pleas. The first special plea alleged that S. M. Walther was in possession of the land in controversy, and by his leave and license the defendant committed the supposed trespass; and the second set up title in the defendant, *liberum tenementum.* Issue being joined on the first plea and replication filed to the other two traversing the allegations thereof, and *similiter* added, a jury trial was had, resulting in a verdict for $25 in favor of plaintiff. By leave of the court the declaration was amended so as to allege that the trespass was maliciously committed. A *remittitur* was then entered by plaintiff, reducing the amount of the verdict to one cent. After overruling motion for new trial the court entered judgment for that nominal amount, and costs. Defendant appeals.

The principal ground of reversal insisted upon is, that the plaintiff failed to make out his case by the proofs. The act of pulling down the posts as alleged is not denied, but it is insisted that they were not upon the plaintiff's premises. The litigation grows out of a dispute between the parties as to the location of the line between the plaintiff's property and that adjoining it on the east. Both pieces are parts of lot 4, block 19, in Wells' addition to Nauvoo. There are four lots in the block, lot 4 being in the south-east corner, fronting south on Mulholland street 198 feet and extending north 190 feet, and is bounded on the east by a side street. On June 16, 1864, certain parties conveyed to Sigmund M. Walther a part thereof, described as follows: Commencing at the south-east corner of lot 4, thence north $72\frac{1}{2}$ feet, thence west 74 feet, thence north to north line of said lot, thence west 41 feet, thence south to the south line of the lot, and thence east to the place of beginning. Walther still claims to own the part so conveyed to him, and is in possession of it. Plaintiff claims to own a part of said lot 4 adjoining Walther on the west, described as commencing 115 feet west of the south-east corner of said

lot, thence running west 35 feet, thence north 190 feet, thence east 35 feet, thence south 190 feet to the place of beginning.

As early as 1844 or 1845 a building was erected on this last described piece, and occupied by one Davis as a store and dwelling house. The weight of the testimony is that the west wall of the building was on the west line of the lot and extended east 32 feet, leaving a vacant space of three feet between the east wall and east lot line. This building was of brick, extending back, as nearly as can be ascertained from the evidence, about one-half the depth of the lot. Attached to the east half of the building, on the north, was a frame shed, which extended north to within about 8½ feet of the north line and projected east to the east line of the lot. Near the north-east corner of this shed was a well. In 1859 George Ritter went into possession of this building and lot and continued in possession thereof until 1878, when the building was destroyed by fire. From about the time of the construction of the building on this lot there was a fence constructed between it and the Walther lot, extending from Mulholland street to the north line of lot 4. That fence along the main part of the building, from Mulholland street to the frame shed, was substantially three feet east of the east wall of the building, and from the shed to the north line of the lot on a line with the east side of the shed. On November 18, 1889, George Ritter conveyed the lot, with the ruins of the old building upon it, to his son, Paul Ritter, and he, on December 5, 1889, conveyed it to the plaintiff. The fence between it and the Walther property having been destroyed,—at least the south part of it,—plaintiff undertook to rebuild it, and from that attempt this controversy arose.

The defendant claims to be acting on behalf of Walther, as his agent. When he ascertained that plaintiff was about to rebuild the fence he had Walther execute to him a deed for a strip of land, described as follows:

"Commencing 115 feet west of the south-east corner of lot 4;   *   *   *   thence west 4 feet; thence north to the north line of the lot; thence east 4 feet, and thence south to the place of beginning," and it is upon this deed that he attempts to sustain his plea of *liberum tenementum*. We think it perfectly clear that that deed conveyed no title to him. Walther never owned, or claimed to own, that 4-foot strip west of his 115 feet. There is some evidence to the effect that he occupied, with flower beds, etc., a portion of the ground immediately west of his lot, but there is no evidence of such continued, adverse possession by him as could in any sense be said to amount to a prescriptive right or title. The real question of fact must therefore be whether plaintiff was placing the posts, which were removed, on the Walther lot, as described in his deed of 1864, or whether, as claimed by plaintiff, they were on the line between the two lots.

A great deal of testimony was introduced to prove the location of the building on the Ritter lot, the space between it and the Walther lot, and the location of the old fence between the two lots, and after a careful consideration of the evidence of the several witnesses we are satisfied that the jury were justified in finding that the posts were placed by plaintiff on the line of the old fence and on the true line between the two pieces of property. The location of the shed in the rear of the brick building, the well, and the line of fence from there north, (about which there seems to be no dispute as to its being on the line,) considered with the other evidence, makes it clear to our minds that the plaintiff's contention as to the location of the line from there to the street is correct. The conduct of the defendant in attempting to get a deed to four feet of the Ritter lot is an indication that he deemed it important in his controversy with the plaintiff to get some right west of the 115 feet owned by Walther. In fact, he is only able, as we understand the evidence, to make a plausible showing in favor of the position that the posts

were being set on Walther's land by measuring, not from the south-east corner of lot 4, where the description in all the conveyances starts, but by beginning at the south-west corner of lot 4 and measuring east. No good purpose would be served by attempting to review the voluminous evidence in this record on the question of the location of the disputed line, but we are, as before stated, fully satisfied that the posts removed were not upon the Walther lot. Therefore the defendant failed to establish his defense under either of his special pleas.

But it is insisted that the plaintiff failed to show title and possession to the 34-foot lot. As we have seen, he had a deed to the property, described by metes and bounds, from Paul Ritter. He claimed possession under that title, and the deed was evidence to show the extent of his possession. The lot was vacant and unoccupied after the fire, and the evidence shows that the plaintiff and his grantors exercised acts of ownership over it which were sufficient to constitute possession. "It is not necessary that a party should have his land all enclosed with a fence before he can be said to be in actual possession. Any class of improvements or acts of dominion that indicate to persons residing in the immediate neighborhood who has the exclusive control of the land, will be deemed to constitute possession to the extent of the paper title under which such party entered, so as to enable him to maintain trespass for any injury to the estate." *Eddy* v. *Gage*, 147 Ill. 162, (on p. 170,) and authorities there cited.

Appellant insists that the trial court erred in admitting in evidence a plat of the lot described in the declaration, showing the location of the division fence, etc. The person who made the plat testified that it was accurate in measurements and correct in what it purported to be, and we think it was clearly admissible.

On the plat the space supposed to be the strip in question was designated as "4 feet" and "3 feet," and these

figures the court ordered stricken out.   One was erased and the other not, before it went to the jury.   It is said to permit the plat to go the jury without making the erasure was erroneous.   We do not regard it necessarily so; but even if it was, the error was immaterial.

By agreement of the parties the jury were instructed orally, and a lengthy charge was given, which was taken down and appears in the bill of exceptions.   Counsel for appellant complain that one of the instructions to the jury was to the effect that though the defendant was entitled to the immediate possession of the premises he had no right to take possession in any other than a peaceable manner, "that is, in such a manner as was not violent, tumultuous, and would not provoke a breach of the peace," and this, it is said, was error.   It is insisted that though the manner may have been violent, tumultuous, and of such a nature as likely to cause a breach of the peace, still, unless it did in fact so result, the entry would be peaceable and lawful.   This position is not correct, and the authorities cited do not sustain it.   The instruction, taken as a whole, was as favorable to the defendant as he had any right to ask.   See *Gage* v. *Hampton,* 127 Ill. 87, and cases there cited.

Other instructions contained in the charge are criticised, but upon an examination of them we find no substantial error in them.

The jury found by its verdict for the plaintiff "$25, exemplary damages."   The clerk was ordered to change the form of the verdict from exemplary to simple damages, and also directed plaintiff to amend the declaration by inserting the word "maliciously," in describing the act alleged as a trespass.   Afterwards plaintiff entered a *remittitur* for all the damage assessed by the jury except one cent.   It is insisted by appellant that the court erred in so amending the verdict and directing the amendment of the declaration.   We think there was no error in the ruling in either respect.   But if it were conceded that the

court proceeded irregularly, we are at a loss to perceive how the defendant was in any way prejudiced thereby. If guilty, as we think the evidence clearly shows he was, he was certainly liable for nominal damages, and that is all the judgment of the circuit court requires him to pay.

We are satisfied the appellant had a fair trial, without prejudicial error, and the judgment below will be affirmed.

*Judgment affirmed.*