## Thomas Mitchell, Appellee, v. Ernst Tosetti Brewing Company, Appellant.

### Gen. No. 19,411.

1. LANDLORD AND TENANT, § 508*—*what not justification for forcibly ejecting tenant.* Where a person orally leased certain premises of a brewing company for a saloon, and agreed to sell only the company's beer during the term of the lease, *held* that a breach of the agreement to sell the company's beer furnished no justification for a trespass of the company in entering the premises and forcibly ejecting the tenant and his property.

2. LANDLORD AND TENANT, § 508*—*what constitutes forcible entry by landlord.* Where an entry by the landlord upon premises occupied by a tenant was through the means of an armed man and a posse of hired men, *held* that the entry constituted a forcible entry and not a peaceable entry, though no physical resistance was made.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES H. BOWLES, Judge, presiding. Heard in this court at the March term, 1913. Affirmed. Opinion filed October 13, 1914.

JOSEPH H. MUHLKE, for appellant.

PATTISON & SHAW, GEORGE E. GORMAN and MILLS & HOLLY, for appellee; WILLIAM H. HOLLY, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The plaintiff in this case was on February 28, 1906, in possession of and doing business in a certain dramshop or saloon at the southeast corner of Halsted and Forty-fifth street in the city of Chicago. On said February 28, 1906, the defendant corporation dispossessed the plaintiff of said tenement with the strong hand. Several men employed by the defendant came into the establishment, where business was then being conducted by the plaintiff's representative, as he says (although it was very early in the morning), and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

placed all the goods of the plaintiff in the street. A witness for the plaintiff (his brother and barkeeper), testified that there were about fifteen customers and a porter in the place when the men came in, and that they with himself were ordered out, and the doors locked or guarded to prevent re-entrance. Trapp, the man who led the entering and dispossessing party, on the other hand testified that while the doors were open there was nobody in the dramshop when he and his men came but the barkeeper. Trapp told this man, he says, that he would have to put him out,—"if he had anything to take, to take it with him, that I would put him out." The man did not resist, he says, but walked out, and everything in the place except the fixtures was put out after him on the street. Trapp was armed. He usually carried a gun, he says, and he looked for a gun behind the bar because, he was told that the barkeeper was "a bad man" and if there was a gun "he could not come out" (from behind the bar) "with his gun."

The result of this dispossession was the suit in the Circuit Court, which is now before us on appeal. The plaintiff sued the defendant corporation in trespass, alleging in his declaration damage to his property, business and credit by this action of the defendant. The plaintiff was by the verdict of a jury on the trial awarded four thousand dollars, and the court entered a judgment for that amount on the verdict. The defendant appealed to this court. The defense made below was thus expressed by the special plea, which in addition to the general issue of not guilty was filed:

"And for a further plea * * * it says that before the entry by the defendant complained of, plaintiff violated his contract with the defendant, under which he obtained possession of said premises, in this that he sold other draft beer upon said premises than the beer manufactured and sold him by the defendant, which draft beer he had agreed to sell exclusively as

a condition upon which he was given possession of said premises by the defendant, whereby the defendant became entitled to the possession of said premises, and this,'' etc.

In this court the errors assigned and insisted on are rulings which excluded from the evidence for the jury's consideration certain documents and certain conversations connected with the contention of the defendant that the plaintiff had agreed to sell the defendant's beer exclusively; rulings in giving and refusing instructions; and that the verdict is excessive and against the weight of the evidence.

There was no written lease between the defendant and the plaintiff. The plaintiff, who in 1901 thought he would like to occupy the corner in question, became a negotiator between one O'Leary, who owned the lot, which then had no building on it, and the Tosetti Brewing Company, and as a result O'Leary made a ten-year lease of the ground to the Tosetti Company. This lease had no provision about how the land should be improved or occupied, although certain conditions not relevant here were attached if it should be improved by the lessee. The Tosetti Company, however, agreed with Mitchell, the plaintiff, to build a building and lease it to him at the same amount it was to pay for ground rent under its lease from O'Leary, plus all taxes and six per cent. on the cost of the building. This was evidenced by a receipt which was given to Mitchell by the Tosetti Company for $500, which was demanded of and paid to it by Tosetti as a deposit. The receipt read:

"Chicago, November 29, 1901.

. Received of Thomas Mitchell Five Hundred Dollars, being on account of premises to be erected at the southeast corner Halsted and Forty-fifth streets, it being understood that this amount is to be applied on last rent due on lease to be given. The amount of rent to be paid is the same as the amount paid by us for ground rental and all taxes and in addition thereto an

amount equal to six per cent. on the cost of the building. Six per cent. to be allowed on the deposit while in our possession.

ERNST TOSETTI BREWING COMPANY,
Ernst Tosetti, President.''

About the fifth of January, 1901, the building having been completed, Mitchell took possession and continued therein until he was dispossessed as before stated on February 28, 1906. During this time he was not in default in his payments as provided for by the agreement.

Ten or eleven days before the ejection Mitchell was served with two typewritten notices, signed ''Ernst Tosetti Brewing Company, Ernst Tosetti, President.'' One notified him: ''That in consequence of your default, to-wit, in selling other beer than that brewed and manufactured by the Ernst Tosetti Brewing Co. in the premises now occupied by you, being the one-story brick building at the southeast corner of Halsted and Forty-fifth streets in Chicago, Illinois, the undersigned has elected to determine your lease. And you are hereby notified to quit and deliver up possession of the same to the undersigned within ten days from this date.''

The other notice read:
''To Thomas Mitchell:
The undersigned hereby demands of you all the personal property belonging to it leased to you and now used by you in the saloon business at No. 4501 South Halsted street in Chicago, Cook County, Illinois.''

This last notice referred to certain furniture or trade fixtures which Mitchell had taken to the place at 4501 South Halsted street from his former location at 4451 South Halsted street, where he had previously been a customer of the Tosetti Company, and certain other fixtures more in number, which had been originally placed by the Tosetti Company at 4501. As to the former, Mitchell had signed so-called ''Licenses to use Personal Property'' on June 8, 1900, and April 9, 1900, respectively. As to the latter he signed one March 18,

1902. This last one, like the others, after reciting that the Ernst Tosetti Brewing Company licensed and permitted Patrick Mitchell to use certain articles "heretofore placed by the said Brewing Company in the care of the said party of the second part until the said Ernst Tosetti Brewing Company shall desire to reclaim said property, which it shall have the right at all times to do," contained this clause:

"It is understood that the said party of the second part shall use the said property only in carrying on a saloon in which beer manufactured by the Ernst Tosetti Brewing Company only shall be sold."

It was these "licenses" which the appellant herein maintains were erroneously withdrawn from the consideration of the jury.

The day before the ejectment took place the secretary of the Tosetti Company brought to Mitchell and offered to him the $500 and interest that had been deposited by him with the Brewing Company as security. Mitchell refused to take it. Either on that occasion, before tendering the money, as Mitchell swears, or ten days previous, before serving the notices before described on him, as Doerscher, the secretary of the Brewing Company, testifies, (it is immaterial which), the secretary of the Brewing Company presented a draft of a lease to Mitchell signed by the Tosetti Brewing Company, purporting to lease the "one-story brick building at the southeast corner of Halsted and Forty-fifth streets to Mitchell for ten years from December 1, 1901, "to be occupied for saloon purposes and for no other purpose whatever." This draft of a lease contained this covenant:

"It is further covenanted and agreed by said second party and it is a part of the consideration of this lease, that he will sell no other beer in said premises than that brewed and manufactured by said first party."

Mitchell declined to sign it, as he was requested by Doerscher to do, until he had consulted his lawyer, and it was never signed.

At the trial, Doerscher, Carr, who was manager of the Tosetti Company from 1901 to 1906, and Mr. Muhlke, the lawyer for the defendant, testified that in conversations with Mitchell had by each of them at the time of his going into possession of the premises, Mitchell agreed, as a condition precedent to the arrangement that was made, that he would sell no other draught beer on the premises than that made by the Tosetti Brewing Company.

After this testimony was in, the counsel for the plaintiff moved to strike it out and the court granted the motion and afterwards, by instruction, withdrew it from the jury. The first instruction (which it is contended by the defendant was erroneous) is as follows:

"The court instructs you that the agreement, if any, entered into between plaintiff and defendant, that plaintiff should sell no other draught beer than defendant's on the premises in question, was not valid in law nor binding upon the plaintiff. Notwithstanding such agreement, if any such was made, plaintiff had the right to sell any beer he desired and you should entirely disregard any evidence you may have heard concerning any such agreement.

"The Court further instructs the jury that all evidence admitted by the Court and afterwards stricken out by order of the Court, and all evidence offered by either side and rejected by the Court shall be entirely disregarded by the jury."

The language of this instruction cannot be justified in the letter of it. To say that an agreement of the kind mentioned was not valid in law nor binding on the plaintiff, and that notwithstanding such an agreement the plaintiff would have a right to sell any beer he desired, pre-supposes of course that there was no consideration for the agreement. If, as the defendant maintains and introduced evidence to prove, the entire arrangement in its inception included this feature of the sale of defendant's beer solely, the agreement would be as valid and binding as any other contract.

Mitchell v. Ernst Tosetti Brewing Co., 189 Ill. App. 163.

And if this suit were for a breach of that contract this instruction would be fatally erroneous.

But this suit is not for a breach of that contract, if it exists; and if this instruction means, as applied to the facts in this case, that the agreement, if it existed, was entirely irrelevant to the issues involved, and that the cause must be considered without reference to it, and that all the evidence concerning it was therefore withdrawn from the consideration of the jury, then, in our opinion, it is erroneous only in its phrasing and the literal signification of its words, but is right in substance and effect and furnishes no reason for a reversal of this judgment. Neither the ruling on the "contract" nor the withdrawal of the evidence contained in it could have, we think, any effect on the unlawfulness of the defendant's action or the measure of damages which might be used.

If the "contract" existed, as the defendant contends, and was broken, as it also contends, this afforded no justification whatever for the action of the defendant. It never was the law here nor in any civilized country that on the breach of a contract the penalty, whatever it might be, could be enforced with the high hand, and that the injured party should be in his own person, prosecutor, witness, judge, jury and sheriff all at once. Such a condition would be a worse "menace to the community" than that of "broken promises" described in the argument of defendant's counsel.

Aside from the position being very doubtful that the breach of the contract to sell Tosetti beer exclusively would be a ground, under the circumstances, for a termination of the lease, even if everything that the defendant contends for concerning that contract being a condition and cause of the original arrangement be assumed as true and strictly accurate, that lease was not legally terminated nor the possession of the plaintiff legally taken away from him by the pro-

ceedings of the defendant. The defendant, calling attention to a stipulation that any defense, including "*Liberum tenementum*" might be made under the general issue, and citing and quoting *Fort Dearborn Lodge v. Klein,* 115 Ill. 177, insists that the defendant had the right, on a condition of the leasing being broken, to enter peaceably, and that the entry involved here was peaceable. We do not regard it so. For an armed man to bring a posse of hired men, armed or unarmed, into a man's open place of business, have them enter at several doors simultaneously, and, after looking for weapons, order the man or his representative out under threat of putting him out, and then place a large and heterogenous assortment of personal property out after him on the sidewalk and post a guard against re-entry, is not a peaceable entry, whether or not actual physical resistance against an overwhelming, intimidating force is made. It is a forcible entry, and it is not worth while to spend time and space in an attempt to distinguish it from the entry discussed in *Fort Dearborn Lodge v. Klein, supra,* where indeed, as the court remarks, the peaceableness of the entry was admitted by the pleadings.

It being a forcible entry, it was unlawful. *Wahl v. Laubersheimer,* 174 Ill. 338; *Schwartz v. McQuaid,* 214 Ill. 357; *Edwick v. Hawkes,* 18 L. R. Ch. Div. (1880-1881), p. 199.

If the defendant had a right to the possession, it should have gone about recovering it by the orderly processes of law.

The court would have been fully justified, after the evidence was all in, as we think, in giving the instruction asked by the plaintiff, "to find the defendant guilty and assess the plaintiff's damages."

This being our view, there really is nothing further for us to consider than this: Were the instructions on damages erroneous? We do not think they were. They laid down the correct principles both as to com-

pensatory and punitive damages in an action of trespass. Nor do we think the evidence rejected could be considered in mitigation of damages of either kind. It did not affect them. As we have before indicated, the breach of a contract furnished, in our opinion, no justification, either complete or partial, for the trespass, which should have been judged, as it undoubtedly was, by the jury without reference to such alleged breach.

In this view of the case we find no reversible error in the proceedings below. The judgment of the Circuit Court is therefore affirmed.

*Affirmed.*