Elsie Mae Faubel, Executrix of the Last Will and
Testament of Will R. Neff, Deceased, Appellee, v.
Michigan Boulevard Building Company et al.,
Appellants.

Gen. No. 37,358.

160

Opinion filed November 27, 1934. Rehearing denied and supplemental opinion filed January 15, 1935.

SUMNER C. PALMER and CLOYES & KLINGLER, all of Chicago, for appellants.

ARND, GAVIN, TEARNEY & HANLEY, of Chicago, for appellee; FREDERICK ARND, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

This appeal seeks to reverse a judgment of the municipal court for $1,700.50 entered in favor of plaintiff, Elsie Mae Faubel, executrix of the estate of Will R. Neff, deceased, and against the Michigan Boulevard Building Company (hereinafter referred to as the Building Company), Wallace G. Clark and J. Milton Trainer, defendants, in an action of trover tried by the court without a jury.

Plaintiff's statement of claim alleged that prior to and at the time of his death, October 31, 1931, Will R. Neff was a dentist occupying suite 1716 and 1717, 30 North Michigan boulevard, in which he had installed and owned a large quantity of equipment, fixtures, furnishings and furniture, used by him in connection with the practice of his profession; that Neff left a will in and by which plaintiff was named executrix and sole devisee; that July 11, 1932, his will was admitted to probate by the probate court and plaintiff was appointed executrix thereof; that the order of the probate court admitting the will to probate and appointing plaintiff executrix was appealed to the circuit court by one George R. Neff, and on June 8, 1933, the circuit court entered judgment admitting the will to probate, and July 13, 1933, letters testamentary were issued to plaintiff as executrix; that in June, 1932, plaintiff was lawfully possessed of the goods and property heretofore referred to, valued at $4,000; and that June 15, 1932, defendants wrongfully took such goods and chattels out of the possession of plaintiff, well knowing that same was the property of plaintiff as executrix of Neff's estate, and converted the property to their own use.

Wallace G. Clark filed an affidavit of merits on behalf of all the defendants in which he admitted that Neff occupied rooms 1716 and 1717, 30 North Michigan boulevard, and that he was the owner at the time of

his death of the equipment, etc., contained in such rooms; that Neff left a will in which plaintiff was named executrix of his estate; that the equipment, etc., remained in said rooms; and that the building at 30 North Michigan boulevard was owned by the Building Company.

Clark then alleged that plaintiff took possession of Neff's personal property located in said rooms immediately after his death and assigned the lease of the suite to one Dr. Bell, and that Bell occupied the rooms for three months; that Neff with his equipment occupied the rooms under a ten-year lease beginning May 1, 1923, and ending April 30, 1933, at a term rental of $18,800, payable at the rate of $156.66 monthly; that plaintiff never demanded of defendants or any of them such goods and equipment; that the defendants did not on June 15, 1932, nor at any other time wrongfully take the said goods and chattels out of the possession of plaintiff, and that they did not at any time convert them to their own use; that the equipment was not of the value of $4,000 on June 15, 1932; and that defendant Building Company, under the terms of Neff's lease, leased the premises covered by such lease, after they were vacated by Dr. Bell, to one Dr. Prinz, and received as rent from him $313.32, which was credited to the rent accruing under the terms of Neff's lease. Except as to the value of the property defendants are charged with converting, the material facts in this case are either admitted or undisputed.

It appeared that Neff entered into a lease with the building company of the premises described for the period and rental set forth in defendants' affidavit of merits; that he occupied said premises as his dental offices and paid the specified rent therefor until his death October 31, 1931; that he left a will in which he nominated plaintiff as executrix of his estate; that immediately after Neff's death she entered into possession of his suite of offices and took charge of the

personal property located therein; that a short time thereafter she entered into an arrangement with one Dr. Bell for his purchase of the lease and equipment, furniture, etc.; that he took possession of the premises and continued to occupy same until about February 1, 1932, when, because of his failure to comply with the terms of his agreement, plaintiff repossessed herself of the offices and personal property therein contained; that with the aid and assistance of another dentist she carried on the dental business of the deceased and continued to do so up to and including June 14, 1932; that between the time plaintiff closed the offices for the day on June 14, 1932, and the usual hour for opening same for business the next morning, June 15, 1932, the building company, through its agents, changed the locks on the doors of the offices and deprived plaintiff of access to them; and that defendants still retain the personal property located therein, which belonged to Neff at the time of his death.

Clark and Trainer, who were disclosed by the evidence to be half owners of the building, as well as agents for the building company, wrote the following letter to plaintiff June 27, 1932:

"This is to advise you that because of your failure as executrix of the estate of Dr. Will R. Neff, deceased, to pay rent for Suite 1716-17, on the seventeenth floor of the Peoples Trust & Savings Bank Building, which you have occupied since the death of Dr. Will R. Neff, up to and including a recent date, and have been carrying on the business of the deceased as executrix, and during which period you have obligated the estate in the sum of $798.17 as per statement herein enclosed, we have on the 15th day of June, 1932, closed said premises, and will not let you reopen same until this obligation shall have been paid."

Defendants in their brief state their contentions as follows: (1) That the finding and judgment are contrary to the law and evidence; (2) that the judgment is excessive; (3) that there is no evidence to support the joint judgment against the building company and the individual defendants, Wallace G. Clark and J. Milton Trainer; and (4) that the court erred in excluding proper evidence offered by them.

It is sufficient answer to defendants' first contention to say that the law applied to the admitted facts sustains plaintiff's right to recovery.

We find no merit in defendants' second contention that the judgment was excessive. It is true that there was a sharp conflict in the evidence as to the value of the property converted, but the trial judge heard and saw the witnesses and, in our opinion, his finding and judgment as to such value was not against the manifest weight of the evidence. There was ample evidence in the record to sustain the damages awarded.

Defendants have not argued their contention that there was no evidence to support the joint judgment against the building company and the individuals, Wallace G. Clark and J. Milton Trainer, and it is therefore unnecessary to consider it.

It is sufficient answer to defendants' fourth contention that the trial court erred in excluding proper evidence to state that no assignment of error is predicated on such ruling or rulings.

It has been rather difficult to follow defendants' brief and argument. Certain definite contentions are made by them, some of which are either abandoned in their argument or not covered by the errors assigned.

However, defendants' real contention, in so far as we are able to glean it from their argument, is that they were justified under the terms of Neff's lease in seizing his equipment, etc., as they did, because rent had accrued under the lease subsequent to his death

and was due and owing to them on June 15, 1932, when they locked plaintiff out of the premises and denied her right to the possession of Neff's property.

It is urged that plaintiff's action must fail because there was no demand made upon defendants to return the property and no refusal by them to do so. If a demand were necessary the evidence clearly shows that plaintiff made such demand for the return of the property which defendants refused to comply with. But the law is firmly established that no demand is required as a condition precedent to recovery in an action of trover where the property has been wrongfully taken. It is only where a party comes rightfully into possession but his possession has become wrongful that a demand and refusal are necessary to prove that he has converted the property to his own use. When the possession is taken under a wrongful claim of ownership the taking is of itself a conversion and no demand is required. (*Bruner v. Dyball*, 42 Ill. 34.) Even the cases cited by defendants adhere to this rule and we have been unable to find a case that holds to the contrary.

Defendants cannot justify their unlawful seizure of the property on the ground that there was rent due and owing to them under Neff's lease. They urge that they had a right under the terms of the lease to seize and sell it. The lease gave them no such right. We have carefully examined the lease and find no right or authority granted therein to the lessor to seize and sell lessee's property found in the premises except in case of abandonment or vacation thereof by the lessee. Defendant building company might have proceeded legally to distrain the property for the unpaid rent or it might have enforced its lien upon the property, provided for in the lease, by a foreclosure in equity. It saw fit to pursue neither its legal or equitable remedy, but wrongfully and unlawfully seized and detained the property and still retains it. In our

opinion the defendants cannot escape liability for so doing.

Defendants then urge that plaintiff had no such right of property June 15, 1932, in the equipment, etc., converted by them as justify the maintenance of this action by her, inasmuch as letters testamentary were not issued to her as executrix of Neff's will until July 13, 1933, pursuant to the judgment of the circuit court June 8, 1933, admitting Neff's will to probate.

To maintain her action of trover plaintiff must show not only a tortious conversion of the personal property by defendants, but also that at the time of the alleged conversion she had the right of property, general or special, in the chattels converted, and also the possession or a right to the immediate possession thereof. There must be a concurrence both of the right of property, general or special, and of the actual possession or the right to immediate possession, and this concurrence must exist at the time of the conversion. (*Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.,* 157 Ill. 554.)

All of these elements concur in this cause. The tortious conversion has been shown. Plaintiff's possession of the property is admitted, and, although letters were not finally issued to her as executrix of Neff's estate until July 13, 1933, she had by virtue of her nomination as executrix by Neff a special right of property in the equipment, etc., under section 4, chapter 3, Cahill's Illinois Revised Statutes, which provides in part as follows:

"The power of the executor over the testator's estate, before probate of the will and obtaining letters testamentary, shall extend to the burial of the deceased, the payments of necessary funeral charges, and the taking care of the estate; . . . ." It was her duty under the statute to preserve the property of the testator prior to the issuance of letters to her as executrix. In any event, when the will is admitted to

probate the grant of letters relates back to the date of the testator's death and validates all acts of the executrix which are otherwise lawful and proper. (*Wheeler v. Chicago Title & Trust Co.*, 217 Ill. 128; *Globe Accident Ins. Co. v. Gerisch*, 163 Ill. 625; Am. & Eng. Ency. of Law, 2nd Ed. 907.)

It is clear that under the statute and cited authorities plaintiff had a right of property in the chattels converted. The conclusion is inevitable that defendants are guilty of the unwarranted and unlawful conversion of property belonging to Neff's estate.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and SCANLAN, J., concur.

SUPPLEMENTAL OPINION UPON PETITION FOR REHEARING.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendants filed a petition for a rehearing in which points are urged which were raised neither in the trial court nor in the brief and argument filed in support of their appeal. Although under the rules of this court we might have disregarded the questions thus presented, we have given them careful consideration.

In their petition defendants contend that the lien provision in the lease in this cause is in the nature of a chattel mortgage and that the rights of the parties thereunder are governed by the rules of law applicable to chattel mortgages; that after default in the payment of rent the lessors had the legal title to the property contained in the demised premises by reason of their lien and also had the immediate right of possession of said property without the consent of the mortgagor (lessee); that after such default the only restriction on the right and mode of taking possession was that the lessors must act in an orderly manner

and must not commit a breach of the peace; that their right to take possession of said property, without the consent of the lessee and without process of law, arises by operation of law and exists without regard to any power of seizure in the lease; and that the right to take possession exists without regard to the right of distraint and that the levy of a distress warrant is not the only means for the assertion, protection or enforcement of the landlord's lien.

We think that such contentions, predicated upon the lease lien in this case, are unique in so far as the relation of landlord and tenant is concerned. If the law is as contended by defendants, then, if any tenant occupying an apartment under a similar lease is in arrears for the stipulated rent for a day, a week, a month or any other period, the lessor, during the temporary absence of such tenant, may, without process of law, change the locks on the doors of his apartment, refuse him entrance to same, deny him access to his furniture or other property contained therein and the use thereof and thus compel him to pay his unpaid rent or resort to a court of equity to establish his right to redeem his property.

We are of the opinion that this never was the law of this State and is not now. We have carefully examined every case cited by counsel and many others in this connection, and, while some of them hold that the lien of a landlord reserved in a lease is in the nature of a chattel mortgage for the purpose of determining the rights of conflicting lienors or claimants to the property of the tenant involved in the respective cases, we have been unable, after diligent search, to find any authority that holds that as between the lessor and the lessee a lien provision in a lease may be construed as a chattel mortgage, or as being in the nature of a chattel mortgage, with the result that the landlord has the right to seize the tenant's property without process of any kind upon default in the pay-

ment of rent. In every case cited the lienors resorted to the orderly processes of law in their efforts to establish their liens and right to preference as to the property of the tenant on the demised premises because of such lien. None of the cited cases bears upon the right of a lessor to enter the premises of a lessee with force and seize his property, or the lessor's right to reduce such property to his possession, or the manner in which the lease lien may be foreclosed or enforced against the lessee.

Under the law of this State where a chattel mortgage is given, the title in the mortgagee, upon condition broken, becomes absolute and he may reduce the property to his possession, and as a general rule, in the absence of a statutory provision, or where there is no language in the mortgage to restrain or control, the mortgagee has the right to immediate possession. This right arises by virtue of the fact that the title to the property is vested in him. (11 C. J. 550, par. 247.) In the instant case the lease vests no title, either absolute or conditional, in the lessors and gives them no right to the possession of the premises in question except as set forth in section 10 of the lease.

As stated in our former opinion neither under the provisions of section 10, nor in any other provision of the lease in this case, are the lessors vested with any right either to seize and dispose of, or to seize and withhold the lessee's property, except in the event the lessee vacated or abandoned the premises.

We think that the only purpose served by the injection of the chattel mortgage theory into this case is to confuse the issues. The law governing chattel mortgages cannot possibly be applicable to the determination of the questions presented on this appeal. The rules and principles governing the relations between landlord and tenant are controlling.

Independently of the provisions of a lease a landlord in this State has no common law lien upon the

property of his tenant for rent; and he has no statutory lien except as to growing crops. (*Herron v. Gill*, 112 Ill. 247; *First Nat. Bank of Joliet v. Adam*, 138 Ill. 483.) If a lien is given by statute it exists independently of the remedy to enforce it; but in the absence of a statutory lien it is necessary to take proceedings to acquire a lien on the property of the tenant. (36 C. J. 470, par. 461.)

Defendants not only unlawfully converted the lessee's property but their forcible invasion of the tenant's premises was unwarranted under the established law of this State. Even if there were rent due and unpaid the landlord had no right to forcibly enter into possession of the demised premises without proper process. (*Hubner v. Feige*, 90 Ill. 208.) If defendants had the right to possession they should have gone about recovering it by the orderly processes of law. (*Mitchell v. Tosetti Brewing Co.*, 189 Ill. App. 163.)

In the case of *Schwartz v. McQuaid*, 214 Ill. 357, where, in the tenant's absence, the landlord or his agent pushed aside an obstruction over a hole in the window, reached through and opened the door, and thereafter changed the locks on the doors and barred the tenant from the premises, the court held that, even though the tenant was wrongfully in possession, the landlord had no right to oust him unless he could do so without force, and that, even though the premises were being used for illegal purposes, the lessee was entitled to his day in court before he could be deprived of the benefits of his lease.

Any entry against the will of the lessee must be considered an entry by force. (*Phelps v. Randolph*, 147 Ill. 335.)

In the case of *Friedman v. Kappel*, 257 Ill. App. 568, this court, after citing *Kellogg Newspaper Co. v. Peterson*, 162 Ill. 158, and *Powell v. Daily*, 163 Ill. 646, to the effect that at common law the goods of a tenant

were free from the landlord's lien until they were actually taken under a distress warrant and that, except as to crops grown or growing on the demised premises, the landlord in this State can acquire a lien only by commencing proper proceedings, held, after reciting the lien provision of the lease in that case which was similar to the one in this case, that, if it created a lien, it contemplated its enforcement in a proceeding in equity. In the instant case the lease specifically provided for foreclosure in equity of the lien therein reserved. While this remedy was not exclusive the provision for such foreclosure is conclusive of the fact that defendants contemplated, when they drew the lease, that the lien therein provided for could only attach to tenant's property through appropriate proceedings.

Under the rule announced in *Lillard v. Noble,* 159 Ill. 311, it is doubtful if a proceeding in distraint will lie against the administrator or executor of a deceased tenant for the reason there announced that ''its only use is to obtain possession of the property where the tenant might otherwise dispose of it to defeat the lien. There is no such danger from the administrator and, therefore, no use for such proceeding against it.'' In that case the claim for the unpaid rent was filed against the estate of the deceased tenant with a prayer for preference because of the landlord's lien, and appropriately so, the court held. If the rule announced in the *Lillard* case precluded defendants in this case from distraint against the tenant's property, at least two other remedies were available to them to assert and enforce their lien for the unpaid rent. They could have filed their claim, seeking preference because of their lien, against Neff's estate in the probate court, or they could have proceeded to foreclose in equity against the tenant's property as provided in the lease. They did neither, but unlawfully invaded lessee's premises and seized and withheld the property con-

172

tained therein.  For such conversion they cannot escape liability for the value of the property.

We see no reason to change our former opinion and the petition for rehearing is denied.

*Petition for rehearing denied.*

GRIDLEY, P. J., and SCANLAN, J., concur.