Edward P. McKeown, Appellee, v. William T. Pridmore, as Executor of the Last Will and Testament of Josephine E. Springer, Deceased, and William T. Pridmore, as Trustee Under the Last Will and Testament of Josephine E. Springer, Deceased, Respondents.

Appeal of William T. Pridmore, Individually, Appellant. Maude E. Schwartz, as Administratrix of the Estate of Schuyler Colfax Schwartz, Jr., Deceased, Intervenor Appellant.

Gen. No. 41,614.

Opinion filed June 25, 1941.

WILLIAM T. PRIDMORE, *pro se;* POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, ALBERT E. JENNER, JR., and SAMUEL W. BLOCK, all of Chicago, of counsel.

GEORGE E. WOODS, of Chicago, for certain other appellant.

LEO J. HASSENAUER, of Chicago, for appellee; EDWARD P. McKEOWN and RAYMOND J. BOLAND, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On July 15, 1931, Josephine E. Springer, a widow residing in Chicago, made and published her last will and designated William T. Pridmore as executor and trustee. She died on September 7, 1931. The will was admitted to probate and Mr. Pridmore qualified as executor. He also consented to act as trustee. Martha Schwartz was the widow of Schuyler Colfax Schwartz, the deceased son of the testatrix. The ninth clause of the will directed the trustee to pay to Martha Schwartz the sum of $160 each month during her lifetime, and then to pay to the testatrix's grandson, Schuyler Colfax Schwartz, Jr., 75 per cent of the net income from the trust estate (after paying the sum of $160 per month to Martha Schwartz) until he attained the age of 35 years, and further directed the trustee to pay to Schuyler Colfax Schwartz, Jr., "providing he is not under any legal disability to receive it," the sum of $10,000 from the corpus of the trust estate when he became 35 years of age; to pay the grandson the additional sum of $10,000 from the corpus of the trust estate when he attained the age of 40 years, the sum of $10,000 when he attained the age of 45 years, and to pay to him on attaining the age of 50 years one-sixth of the corpus of the entire trust estate then in the hands of the trustee; to pay to him one-fifth of the corpus of the entire trust estate in the hands of the trustee when he, the grandson, attained the age of 55 years; and to pay to him one-quarter of the corpus of the trust estate then in the hands of the trustee when he, the grandson, became 60 years of age. Clause 11 of the will, known as the spendthrift clause reads:

"No money or property payable or distributable by said trustee under the provisions of this instrument shall be pledged, assigned, transferred, sold or in any manner whatsoever anticipated, charged or encumbered by any of the beneficiaries hereunder, or be in any manner liable, in the possession of said trustee, for the debts, contracts or engagements of any of the

beneficiaries hereunder.'' On January 5, 1935, Schuyler Colfax Schwartz, Jr. attained the age of 35 years, and he then claimed that under the provisions of the will he was entitled to receive from the trustee the sum of $10,000. For convenience, we will hereafter refer to Schuyler Colfax Schwartz, Jr. as the beneficiary. The trustee declined to pay the beneficiary the $10,000 because he was indebted to him as trustee in a sum far exceeding $10,000. The beneficiary then consulted an attorney at law named Edward P. McKeown and retained him. McKeown was successful in securing the entry of a decree finding that the trustee did not have the right to withhold the $10,000 due the beneficiary on his 35th birthday. On February 15, 1940, McKeown filed a complaint at law in the circuit court of Cook county against William T. Pridmore, as executor and trustee under the last will and testament of Josephine E. Springer, deceased. The complaint alleged that on October 20,' 1934, plaintiff was retained by the beneficiary to represent him as his attorney and to ascertain his rights and interest under the will; that the beneficiary had no 'funds with which to pay him a retainer fee, or for any legal services to be rendered; that an investigation as to the law and facts was made beginning on September 28, 1934, and that the necessary steps were taken which would entitle plaintiff to an attorney's lien. A summons was issued, directed to Pridmore as executor and trustee, and he was served in these capacities. He filed his separate appearances as trustee and as executor. As trustee he filed a demand for a jury trial. On March 18, 1940, Pridmore filed separate motions to strike the complaint. One of these motions was filed in his capacity as executor and the other in his capacity as trustee. McKeown moved to strike these two motions. No action was taken on Pridmore's motion to strike the complaint at law, or on McKeown's motion to strike such motions. On April 1, 1940, pursuant to

leave granted, McKeown filed a pleading entitled, "Petition to adjudicate attorney's lien." The defendant in this petition is shown as "William T. Pridmore, individually and as executor and trustee under the last will and testament of Josephine E. Springer, deceased." It alleged that petitioner was a duly licensed attorney at law; that Pridmore was executor and trustee under the last will and testament of Josephine E. Springer, deceased; that on or about October 20, 1934, petitioner was retained by the beneficiary to secure what was due him as beneficiary and legatee under said will; that McKeown and the beneficiary entered into an attorney's contingent fee contract dated October, 24, 1934, under which the beneficiary agreed to pay McKeown as his attorney, a fee of one-third of all sums recovered; that pursuant to the agreement McKeown instituted legal proceedings in the circuit court in behalf of the beneficiary and against Pridmore, as executor and trustee; that on March 27, 1935, petitioner served a notice of attorney's lien on Pridmore, as executor and trustee; that on January 2, 1940, he again served a similar notice on Pridmore as executor and trustee; that by reason of petitioner's efforts Schwartz became entitled to receive from Pridmore, as executor and trustee of the estate of Josephine E. Springer, certain sums of money; that on January 5, 1940, Schwartz received from Pridmore, as trustee, the sum of $10,000; that petitioner made demand on Pridmore, individually and as executor and trustee, for the sum of $3,333.33, claimed to be due petitioner by virtue of his attorney's lien; that under and by virtue of the contingent fee contract of which Pridmore had full notice, long prior to January 5, 1940, petitioner was entitled to receive from Pridmore, either individually or as executor, or as trustee, the sum of $3,333.33, for which petitioner prayed judgment. Petitioner also prayed for the entry of a rule on Pridmore, individually, and as executor and trustee, to answer the petition, and that a finding be made in

favor of the petitioner for the amount of the attorney's fees and that he have judgment therefor. The order allowing petitioner to file the new petition recognized that such new petition was filed in lieu of the complaint at law theretofore filed. This order further provided that a "rule be entered against William T. Pridmore, individually, and as executor and as trustee under the last will and testament of Josephine E. Springer, deceased, to answer said petition within five days." No summons or other notice was served on Pridmore as an individual, nor did he file his appearance in his individual capacity. Pridmore filed two separate answers, one in his capacity as executor and the other in his capacity as trustee. Each disclaimed sufficient information to form a belief as to whether Schwartz had retained McKeown on October 20, 1934, or whether the contingent fee contract of October 24, 1934 was executed as alleged. The answers admitted that petitioner's notices of alleged attorny's lien were served on Pridmore as executor and as trustee. The answers alleged certain ultimate facts as a basis for Pridmore's contention made as a trustee and as an executor that the petition be dismissed. On April 9, 1940, Schuyler Colfax Schwartz, Jr. died. On May 1, 1940, Maude E. Schwartz, as administratrix of his estate, filed an intervening petition alleging that Schuyler Colfax Schwartz, Jr. became entitled to a legacy of $10,000 from Pridmore, as trustee, on January 5, 1940; that he entered into a contingent fee contract as alleged by McKeown; that the contract did not involve collection of the January 5, 1940 legacy of $10,000, but only the amount payable on January 5, 1935; and she prayed for judgment against Pridmore, as trustee, for the unpaid balance in his hands of the legacy due on January 5, 1940. Maude E. Schwartz, as administratrix of the estate of Schuyler Colfax Schwartz, Jr. also filed an answer to the petition to adjudicate the attorney's lien, and also filed a counterclaim against Pridmore, as trustee, alleging that Schuyler Colfax

Schwartz, Jr. was entitled to receive from the trust estate the sum of $10,000 on January 5, 1940; and praying judgment against Pridmore, as trustee, for the balance of the $10,000 in his hands. Pridmore, as executor and as trustee, filed separate answers to the counterclaim. A motion for summary judgment was filed and denied. When the hearing commenced on June 13, 1940, Pridmore, as trustee, moved to have the cause transferred to the chancery division, which was denied. Thereupon Pridmore, as trustee, insisted on a trial by jury in accordance with the demand he had previously made. The court denied the request for a jury trial. On July 3, 1940, the court entered a judgment order in favor of Edward P. McKeown and against William T. Pridmore, individually, for $3,333.33 and costs; in favor of the counterclaimant, Maude E. Schwartz, as administratrix of the estate of Schuyler Colfax Schwartz, Jr., deceased, and against Pridmore, individually, for $666.67; and in favor of Maude E. Schwartz, as administratrix, and against Pridmore, individually, for $1,000, which sum was being held by Pridmore pursuant to an injunction issued out of the superior court in the case of Georgia Gene Schwartz v. Schuyler Colfax Schwartz, Jr. This $1,000 judgment was made subject to whatever action might be taken by the superior court. This appeal is prosecuted by William T. Pridmore, individually. A separate appeal is prosecuted by Maude E. Schwartz as administratrix of the estate of Schuyler Colfax Schwartz, Jr.

There is virtually no dispute as to the facts. The record shows that prior to January 5, 1935, when Schwartz was to become 35 years of age (and according to the testamentary trust entitled to receive $10,000) a dispute arose between him and Pridmore as to the application of this payment upon a claim which Pridmore, as trustee, had against Schwartz in the amount of $34,730.18 for money due to the estate. Schwartz went to McKeown about this dispute, first

seeing him on September 28, 1934. McKeown applied himself to the problem, examined the facts and authorities and prepared the necessary pleadings. Between September 28, 1934 and October 24, 1934, McKeown conferred on the matter with Schwartz ten or twelve times. The record shows clearly that Schwartz retained McKeown on October 20, 1934, although the parties had been conferring for a month previous to that date. On October 24, 1934, a contingent fee contract with McKeown was signed by Schwartz. This agreement reads:

"This agreement made and entered into on the 24th day of October, A. D. 1934, by Edward P. McKeown, Attorney at Law, party of the first part, and Schuyler Colfax Schwartz, Jr., party of the second part, Witnesseth:

"That Whereas said party of the second part is an heir, beneficiary, and legatee under the Will of Josephine E. Springer, Docket 308, Page 569, general No. 168888, in the Probate Court of Cook County, and whereas the party of the second part is desirous of instituting legal proceedings to determine his rights under said will and to recover his share of interests thereunder.

"And Whereas party of the second part is unable to pay said party of the first part a retainer or any stipulated attorney fee.

"Now Therefore, in consideration of the premises and in consideration of the following agreements, it is agreed by and between the parties hereto as follows:

"1. Party of the first part will undertake said claim and institute whatever legal action is necessary against the executor, trustee, or any other party necessary, in order to protect his interests.

"2. Party of the second part will pay all court costs and expenses arising out of said suit.

"3. Party of the second part will pay to party of first part a sum equal to one-third of whatever amount of money is recovered either by suit, settlement or

compromise in the prosecution of said claim against the above executor, trustee, or legal representative of said Josephine E. Springer.'' On November 13, 1934, McKeown filed a complaint in chancery in the circuit court of Cook county, entitled Schuyler Colfax Schwartz, Jr. v. William T. Pridmore, Individually, and as Executor and Trustee under the Will of Josephine E. Springer, deceased, claiming that Schwartz was entitled to the full payment of $10,000 under the testamentary trust without the application of any of it to the payment of any debt to the trust estate. The theory of the complaint was that the spendthrift clause in the trust protected him. The complaint asked the court to construe certain paragraphs of the will; that the court allow plaintiff a reasonable attorney's fee for the conduct of the litigation, and prayed for other relief. Pridmore, as trustee, filed an answer. He also filed a counterclaim and sought judgment against Schwartz. On March 27, 1935, while the complaint was pending, McKeown served an attorney's lien notice on Pridmore, as executor and as trustee. This notice informed Pridmore, as executor and trustee, that McKeown had been retained by Schwartz and that the agreed attorney's fee was one-third of the amount paid or realized to Schwartz from any claim, suit or settlement. On May 22, 1935, the chancellor entered a decree. This decree found that Pridmore ''has at all times prior to the filing of the complaint herein carried out the directions of the will of Josephine E. Springer, deceased, in accordance with its terms, and has at all times acted impartially as to the several beneficiaries under said will and the trust created thereby, and has not been guilty of any improper conduct with respect to the rights of the plaintiff herein.'' The court found that the sum of $10,000 payable when Schwartz attained the age of 35 years (January 5, 1935) was not liable in the possession of the trustee for the debts, contracts or engagements of Schwartz, and that such

sum of $10,000 should be paid to Schwartz, notwithstanding his indebtedness to the estate. The chancellor also found that Schwartz owed to the estate the sum of $41,791.97. The decree directed Pridmore, as trustee, to pay to Schwartz within 10 days the sum of $10,000, plus interest thereon at 5 per cent per annum from January 5, 1935 to the date of payment; entered judgment on the counterclaim of Pridmore, as trustee, in favor of the trustee and against Schwartz for the sum of $41,791.97, and ordered that an execution issue therefor instanter. The court reserved "jurisdiction as to the matter of allowance of attorneys' and other expenses of this suit." During the hearing before the chancellor Pridmore called attention to the fact that an attorney's lien notice had been served on him. At that time no action toward enforcing the lien was taken. Pursuant to the decree Pridmore paid to Schwartz the $10,000, plus interest, by placing five dollar bills totaling this sum on a table at a time when a deputy sheriff, in possession of an execution under the judgment on the counterclaim for $41,791.97, was present. We assume that Pridmore arranged for a levy under the execution on the counterclaim on the theory that when the money was turned over to the beneficiary it then became subject to his debts. We also assume that Pridmore felt that he was carrying out his duty as a trustee in taking this action. This conduct by the trustee would appear to be contrary to the spirit of the decree. The trustee was complying with the decree by turning over the money, yet he was taking it away from the beneficiary at the instant it was being turned over. The beneficiary through his attorney should have brought the matter to the attention of the chancellor. This was not done. The deputy sheriff attempted to levy the execution on the bills. Schwartz was in need of money and because of that fact a settlement was made between Pridmore, McKeown and Schwartz whereby the sum of $6,168 was

turned over to Schwartz and the sum of approximately $4,100 turned over to Pridmore for application on the judgment. Prior to July 26, 1935, Georgia Gene Schwartz, wife of Schuyler Colfax Schwartz, Jr. filed a complaint for divorce against him in the superior court of Cook county and procured a temporary injunction, restraining Pridmore, as executor and trustee, from paying to or for the benefit of Schuyler Colfax Schwartz, Jr. any sums of money or credits, or transferring any property to or for the benefit of Schwartz. This restraining order was modified to permit the trustee to pay out of the trust legacy of $10,000 due January 5, 1940, all but $2,000. On January 9, 1940, the restraining order was further modified to permit the paying over to Schwartz of any and all sums of money that might be payable by Pridmore, as trustee, except the sum of $1,000 of the testamentary trust legacy due to Schwartz on January 5, 1940, which sum Pridmore, as trustee, was directed to retain until the further order of the superior court. Under the terms of the testamentary trust an additional $10,000 was to be paid to Schwartz on January 5, 1940. On January 2, 1940, McKeown served Pridmore, as executor and trustee, with another notice of attorney's lien predicated upon the contingent fee contract of October 24, 1934. In accordance with Schwartz' request, Pridmore, as trustee, on January 5, 1940 paid Schwartz $4,800 of the testamentary legacy due that date. On March 1, 1940, in response to a further request, Pridmore, as trustee, paid Schwartz an additional $200. No further requests for payments were made by Schwartz and no further payments were made. On March 1, 1940, Schwartz served a notice on Pridmore addressed to him individually and as executor and trustee, reading:

"I hereby notify you that I am not indebted to attorney Edward P. McKeown for any services rendered to me in connection with the legacy of $10,000.00 which became due to me on January 5, 1940, and caution you

not to pay him any sum of money on my behalf, or because of any attorney's lien which he may claim against said legacy.'' At the close of all the evidence the court entered an order dismissing the cause as to Pridmore, as executor and trustee, but not as an individual. No evidence was introduced that any sums of money due·to Schwartz were in the hands of Pridmore as an individual. All the evidence tended to show that Pridmore acted as an executor or as a trustee. Six days after the entry of the order dismissing Pridmore as executor and trustee, the court entered the judgment order appealed from. On the afternoon of that day Pridmore filed a special appearance as an individual for the ''sole and only purpose of questioning the jurisdiction of this court to enter judgment against him individually,'' and he moved the court to vacate the judgment, which motion was denied.

We will first consider the point urged by Pridmore that a trust estate protected by a spendthrift clause is not amenable either to the contracts of the beneficiary or to the claims of his creditors, including liens asserted by attorneys, so long as it is in the hands of the trustee. It will be recalled that clause 11 of the will provides that ''no money or property payable or distributable by the trustee under the provisions of'' the instrument ''shall be pledged, assigned, transferred, sold or in any manner whatsoever anticipated, charged or encumbered by '' the beneficiary ''or be in any manner liable in the possession of'' the trustee ''for the debts, contracts or engagements'' of the beneficiary. The authorities in this State are uniform that the creator of a trust may secure the enjoyment of it to the objects of his bounty by providing that it shall not be alienated by them or become subject to be taken by the creditors. (*Congress Hotel Co. v. Martin,* 312 Ill. 318; *Steib v. Whitehead,* 111 Ill. 247.) In *Baker v. Baker,* 258 Ill. 418 (421), the Supreme Court states

that when the notice claiming an attorney's lien is served "it has the effect of an assignment of an interest in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, and is such an assignment that the defendant or debtor is bound to respect." The service of the notice of lien by McKeown therefore was tantamount to notice of an assignment. The spendthrift clause provides in clear language that no money payable or distributable by the trustee to Schwartz shall be pledged, assigned, sold or in any manner whatsoever anticipated, charged or encumbered, or be in any manner liable in the possession of the trustee for the debts, contracts or engagements of Schwartz. This language is unambiguous. McKeown answers this contention by arguing that where the trustee of a spendthrift trust arbitrarily refuses to pay an indigent beneficiary his principal or income payments under the trust, and the beneficiary is compelled to employ an attorney on a contingent fee contract and by reason of the spendthrift provision the attorney is successful in a suit against the trustee and secures for the beneficiary his principal and income payments, the attorney has a lien on the proceeds thereof. It is not disputed that McKeown performed his services satisfactorily and with diligence. In support of his position McKeown cites the case of *Williams v. Bischoff*, 187 N. Y. 286. We are of the opinion that this citation is not applicable to the facts of the instant case. It is clear that Schwartz had no right to pledge or assign his interest in the legacy and that his creditors could not reach that interest. McKeown could have no greater right in the estate than Schwartz, his client. McKeown suggests that unless an attorney's lien notice is effective as against a spendthrift clause, the beneficiary will be handicapped in retaining an attorney and in many cases denied a remedy against a corrupt trustee. In the instant case, the record shows

that in the fall of 1934 petitioner sought and procured a construction of the testamentary trust. The chancellor could have allowed an attorney's fee to the plaintiff in the case to be paid out of the corpus of the trust estate and in fact reserved jurisdiction for that purpose. The attorney's lien act serves a good purpose. We are of the opinion, however, that the spendthrift clause before us was effective to prevent the assignment of any interest by the beneficiary, and that the attorney's lien, which is in effect an assignment of an interest, cannot attach to such interest. We do not find any support for the argument that an assignment by a beneficiary for the purpose of protecting his attorney in his fees, of such beneficiary's interest in a trust protected by a spendthrift clause, stands in a different category than other assignments.

Appellant assails the judgment by asserting that McKeown failed to prove a preponderance of the evidence that the contract was fair, equitable and just. We find that the relationship of attorney and client existed between Schwartz and McKeown prior to the time when the contract of hiring relied on in this case was entered into. It is well established that where a fiduciary relationship exists, the burden of proof is on the beneficiary of an instrument executed during the existence of such a relationship to show the fairness of the transaction, that it was equitable and just and that it did not proceed from undue influence. This rule applies to contracts between client and attorney made during the existence of such relationship and afterwards attacked by the client. Such contracts, if open, fair and honest, when deliberately made, are as valid as contracts between other parties. Important factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he made a full and frank disclosure of all the relevant information which he had; (2) that the consideration was adequate; and (3) that the principal had independent ad-

vice before completing the transaction. (*Masterson v. Wall*, 365 Ill. 102.) In the case at bar no attempt was made by McKeown to show that the contract between him and Schwartz was fair and equitable in accordance with the rule laid down in the *Masterson* case.

Pridmore also argues that the action prosecuted on behalf of Schwartz by McKeown was not such a "claim, demand or cause of action" a recovery upon which will serve as a basis for an attorney's lien, and points out that the statute gives attorneys a lien as to any money or property recovered on account of suits, claims, demands or causes of action. He states that in the instant case nothing was recovered; that the legacy of $10,000 payable on January 5, 1935, and again on January 5, 1940 was not questioned; that the will had been admitted to probate and the $10,000 would have come to him in any event, and that the only accomplishment of the complaint filed in 1934 was to determine the effect of the spendthrift trust clause. In the case of *Standidge v. Chicago Rys. Co.*, 254 Ill. 524, an attorney's lien case, the court points out that the word "recovered" is used in the sense of "received" or "come into possession of." The record in the case at bar shows that it was necessary for McKeown to file a complaint in chancery in 1934 in order to obtain the $10,000 for Schwartz. In that case Pridmore, as trustee, took the position that it was his duty to decline to pay the $10,000 because of the greater indebtedness owing to the estate by Schwartz. We find that by his ability and services as an attorney McKeown did recover $10,000 for Schwartz. By procuring a favorable decree McKeown also established the right of Schwartz to obtain $10,000 in 1940 and a like sum in 1945.

There is some confusion in the record as to the services for which McKeown seeks recovery. In his original complaint at law he included an intemized state-

ment showing by dates the services rendered and the time consumed. All of the services so itemized, except 15 minutes spent in court on June 19, 1935, were rendered up to and including the day of the entry of the decree, May 22, 1935. This original complaint at law also sets out that since June 1935, McKeown expended 100 hours, at the request of Schwartz, in examining six yearly reports of the trustee; that he expended in excess of 45 hours since June 1935, at the request of Schwartz, in ascertaining the rights of Schwartz and his creditors should Schwartz file a voluntary bankruptcy proceeding; that since June 1935, at the request of Schwartz, he expended 5 hours in consulting Pridmore relative to obtaining medical aid for Schwartz under a provision of the will; that since June 1935 he rendered services in behalf of Schwartz in defending an action brought by Pridmore, as executor, in the municipal court of Chicago, wherein Schwartz was charged with converting certain personal property alleged to belong to the estate of Josephine E. Springer, deceased; that he also commenced an action of replevin in the circuit court of DeKalb county in favor of Schwartz and against certain defendants for the recovery of certain personal property; that since July, 1936, he also expended 22 hours in disposing of other matters in controversy in the complaint filed in the circuit court on November 13, 1934. In the "petition to adjudicate attorney's lien," which superseded the "complaint at law," McKeown averred that he expended in excess of 388 hours in connection with his employment under the agreement with his client. In the course of the trial, the judge addressing Mr. McKeown, said: "You were paid on the first $10,000.00, weren't you?" He answered, "Yes." The court then inquired, "Was that done by any proceeding in court?" and McKeown answered, "No, that was done by my client and I when we got the money back in my office." Most of the services about which McKeown

testified, however, concerned the case filed in the circuit court of Cook county on November 13, 1934, and in which the decree was entered on May 22, 1935. The trial judge held that McKeown was not entitled to recover from the trust estate for services rendered otherwise than in procuring a recovery of the $10,000 payable to Schwartz on his 35th, 40th and 45th birthdays. He held that the Attorney's Lien Act applied only in so far as there was a recovery. The trial judge also held that the action was on the contract and was not for the recovery of the reasonable value of the services. The record shows that after the entry of the decree and the payment of the $10,000 thereunder, the trustee for a time maintained his position that he would have a right to levy on the payments at the time the money would be turned over to Schwartz. However, long before the next $10,000 payment became due, out of which McKeown now seeks to enforce his alleged lien, Pridmore abandoned this position. Therefore, when Schwartz became 40 years of age on January 5, 1940, all the parties recognized that the decree entered on May 22, 1935 was *res judicata* as to the question there determined. Hence, the services rendered by McKeown in procuring that decree settled the rights of the parties. In the instant case McKeown claims that he is entitled to one-third of the $10,000 payable under the testamentary trust on January 5, 1940. If his position is correct, then logically he would be entitled to one-third of each subsequent payment. The trial court pointed out that under such an interpretation of the contract, and had Schwartz lived until he became 55 years of age, McKeown would recover a fee of $54,000. The court also pointed out that the recovery of such a fee would be unconscionable and that he would so hold. The court then stated that what McKeown actually accomplished in behalf of his client was to have the chancellor construe the spendthrift clause in such a manner as to require the pay-

ments thereunder to Schwartz to be made without permitting the trustee to set off the indebtedness which Schwartz owed to him. The trial judge consequently found that the maximum that McKeown could recover would be one-third of the amount of the indebtedness of Schwartz to Pridmore, as trustee.

A further criticism levied at the judgment by Pridmore is that it is null and void for the reason that the court had no jurisdiction of his person. He declares that no valid judgment may be entered against a party who had not been served with process or who has not appeared, and that jurisdiction to render judgment against a person as an individual is not obtained by service upon or appearance by him in a representative capacity. He points out that he was never served with process as an individual and that he did not enter an appearance. McKeown and Maude E. Schwartz, as administratrix, reply that where an action is commenced at law against an executor or trustee and against the same person in his individual capacity, the words "executor" and "trustee" are descriptive of the person only and a personal judgment is the only judgment which can be rendered against him. In the case of *Wahl v. Schmidt*, 307 Ill. 331, 336, the Supreme Court said:

"In a court of law a trustee having the legal title to real estate, together with the right of possession, is regarded as the owner of the property, having all the rights and subject to all the liabilities of ownership. . . . The duties of the trustee as owner make him personally liable for torts committed by him or by the agents or servants in his employ. . . . A trustee is not liable in his representative capacity for an injury caused by his negligence in the management of the property held in trust. . . . The common rule is that trustees are liable only for good faith and common prudence, and that if a loss happens to the trust fund in relation to which they have exhibited this care and

prudence they may be allowed for the loss in their accounts. . . . The right to indemnity, however, is the right of the trustee, and the fact of his being able to secure indemnity from the estate does not make the trust estate liable directly to the person injured by the negligence of the trustee's servants or agents.'' In *Flanagan v. First Nat. Bank of Chicago*, 307 Ill. App. 495, the court said (500):

''It would seem to be just that if plaintiffs attempted to hold the First Trust in its individual capacity it should have been made a party defendant in this capacity.'' In that case the court also said (501):

''Plaintiff's brief cites many cases where a trustee or official in a representative capacity has assumed contractual obligations and where it has been held that a judgment at law rendered against him as trustee is a judgment against him individually. No cases are cited in which a decree in a court of equity rendered against a person specifically named as trustee under no contractual obligations has been held to be an individual judgment.'' It is obvious that if the judgment entered by the trial court is a valid judgment against Pridmore as an individual that he has the right to take credit for the amount thereof in accounting to the beneficiaries of the estate. That is in accordance with the views of the Supreme Court in the *Wahl* case. Under the facts in the case at bar we are of the opinion that the parties should have followed the chancery practice and retained Pridmore as a party in his capacity as trustee. In this connection it will be observed that the lien notices served by McKeown were directed to and served on Pridmore as trustee and executor.

The first point urged by Maude E. Schwartz, as administratrix of the estate of Schuyler Colfax Schwartz, Jr., deceased, is that the intervenor was improperly deprived of a jury trial. The only question of fact which was in dispute and which a jury could pass upon, was as to whether the contract was fair and equitable under the rule laid down in the *Masterson* case. We

have held that McKeown failed to make this proof. Inasmuch as that is the contention of Maude E. Schwartz, as administratrix, it is unnecessary to consider the point further. Maude E. Schwartz, as administratrix, urges that the judgment in her favor should be sustained, and that the balance on hand should be paid to her as administratrix. She points out that on January 5, 1940, it was the duty of Pridmore, as trustee, to pay $10,000 to Schwartz. He did pay $5,000 and retained the balance of $5,000. She agrees with Pridmore that the attorney's lien claimed by McKeown is invalid. She contends, however, that the $5,000 should be paid to her as administratrix and that Pridmore, as trustee, would then have the right to file his claim as a creditor in the probate court of Cook county. Pridmore argues that Maude E. Schwartz, as administratrix, should not receive any money from him as trustee, since the estate which she represents is indebted to him as trustee in a large amount and that the protection of the spendthrift clause is extended only so long as the beneficiary lives. The record shows that when Schwartz became 40 years of age on January 5, 1940, he was entitled to the sum of $10,000 and that the trustee gave him whatever sums he asked. Apparently, he requested only the $5,000, and at the time of his death the trustee had in his possession the remaining $5,000. Professor Griswold in his work on Spendthrift Trusts, page 83, says: "The chief justification of spendthrift trusts should be found in the protection they furnish to the beneficiary. He cannot be protected if he has died, and the restraint should accordingly be allowed only during his lifetime. After his lifetime his property should be held liable for debts." We are in accord with that view. Pridmore, as trustee also maintains that he as a creditor of the estate of Schuyler Colfax Schwartz, Jr., is entitled to apply against his claim the money remaining in his hands as trustee, which was to have been paid to the decedent. Pridmore, as trustee, is a decree

creditor to Schwartz in the sum of $46,328.39. He argues that the part of the judgment order which finds that the administratrix of Schwartz is entitled to recover, is erroneous, since he, as the creditor of the Schwartz estate, is entitled to set off or deduct from his claim against the estate any money owing by him to the estate. Section 60 of the Administration Act, chap. 3, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 110.061], provides that every executor or administrator shall fix some return day for the adjustment of all claims against such decedent and shall publish a notice thereof as to when and where claimants shall produce their claims in writing, and if no objection is made to a claim by the executor, administrator, widow, heirs or others interested, and the claimant swears that such claim is just and unpaid, after allowing all just credits, the court may allow such claim without further evidence. In *Printy v. Cahill,* 235 Ill. 534, our Supreme Court held that it was the duty of the probate court to allow such credits as could be established by competent evidence. We are of the opinion that Pridmore, as trustee and as a creditor of the estate of Schuyler Colfax Schwartz, Jr., has a right to apply the money remaining in his hands as trustee in reduction of his claim against the estate.

Because of the views expressed, the judgment of the circuit court of Cook county is reversed, the petitions of Edward P. McKeown and Maude E. Schwartz, as administratrix of the estate of Schuyler Colfax Schwartz, Jr., deceased, are dismissed, and judgment is entered here for costs for William T. Pridmore, as an individual, against Maude E. Schwartz, as administratrix of the estate of Schuyler Colfax Schwartz, Jr., deceased, to be paid in due course of administration, and against Edward P. McKeown as an individual.

*Judgment reversed and judgment here.*

HEBEL and DENIS E. SULLIVAN, JJ., concur.