**Anna Bell Waring, Appellee, v. F. W. Woolworth Company, a Corporation, Appellant.**

**Gen. No. 48,039.**

First District, Second Division.

June 30, 1961.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (David Jacker, Thomas D. Allen and Frederick W. Temple, of counsel), for appellant.

Harry Silverman and Mack Berg, of Chicago (William C. Wines, of counsel), for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

Plaintiff sued to recover damages for injuries alleged to have been sustained when she fell in defendant's store. Trial by jury resulted in a verdict and judgment for $40,000.00, from which defendant appeals.

The accident occurred during the noon hour on October 6, 1951 in the F. W. Woolworth store located at 18 North State Street in Chicago. Dr. Jardine F. Sinclair, an established physician in private practice who had an office in a near-by building, was called to attend plaintiff. Her account to him, given immediately following the occurrence, was that "she entered the State Street entrance and somebody ran against her and knocked her down." Dr. Sinclair recorded his observations at that time on his standard accident form, for his own records; this report was admitted in evidence. According to this report, she also told the doctor that she had injured her knee in a Walgreen's drug store the week before and was being treated by Walgreen's physician. When she was taken to the first-aid room at Woolworth's, her knee was still bandaged. It also appeared from her testimony in court that she had three or four accidents on CTA conveyances, dating back to 1933 or 1934, in connection with some of which she filed claims. Dr. Sinclair's report showed that after examining her in the first-aid room he had her carried to his office where he took X-rays which disclosed a fracture of the neck of the left femur. He sent her by ambulance to St. Luke's Hospital

8

in Chicago; later in the day she was transferred to St. Francis Hospital, Evanston, where she knew some doctors on the staff and where she remained until February 16, 1952. The doctor's report also showed that plaintiff was sixty-four years old at the time of the accident.

On October 16, 1951, while plaintiff was a patient at St. Francis Hospital, she was interviewed by Fay Turner, an investigator for Travelers Insurance Company; at that time plaintiff gave substantially the same version of the accident as she had previously given to Dr. Sinclair. The two-page statement in Turner's handwriting, given on that date, was offered as defendant's Exhibits 3–A and 3–B for identification. The trial judge refused to admit the document in evidence or to permit Turner to testify concerning the interview. This refusal is assigned as a principal ground for reversal of the judgment. Defendant assesses this statement as its most important piece of evidence, and its counsel say that the jury could not possibly determine the actual cause of the accident without it. The pertinent part of the statement reads as follows:

"On or about the 6th of October 1951 I had entered the Woolworth Store located at 20 N. State St. Chicago. Just as I got a couple steps inside the door and was going to go south to the fruit juice section some woman customer rushed by me on my right side and knocked me down."

Turner's statement was prepared in the first person, evidently in anticipation of obtaining plaintiff's signature thereto, but a notation by Turner, also in his handwriting, at the foot of the statement recites: "The Clt [Claimant] states she is unable to sign this statement for she is too weak. She states everything in the statement is true and she has read the same. F. Turner."

9

These statements are at complete variance with plaintiff's testimony at the trial. She there stated that she entered one of the State Street entrances to Woolworth's and took about six or seven steps after entering, when she "felt" her feet "going from under" her. She said she then noticed a big hole where she had fallen and concluded that her heel must have caught in it. She described the floor as covered with a composition material similar to rubber, and stated that the floor was wet. On direct examination she said that she first saw the hole when someone tried to raise her after she fell, but on cross-examination the following day she was asked about her pretrial deposition given some years earlier when she had said she could not have seen the hole "because people were around. I couldn't have seen because of their legs." At her pretrial deposition she said that she knew of the hole by reason of feeling her foot going down into it. On her cross-examination she stated that her lawyer had shown her photographs of the alleged hole, but the photographs were never introduced in evidence. On direct examination she testified that someone gave her a card, but she added that she crumpled it; later in the trial, after her only occurrence witness, Anthony Zinno, had testified, she explained that even though she had crumpled it she looked at it afterward and give it to her attorney.

Zinno at the time of the trial had a snack-shop concession in a bowling alley; he testified that at the time of the accident he was the manager of a Wimpy's Grill in the Loop. He stated that as he entered Woolworth's he saw plaintiff's feet go from under her as she fell. On the floor he noticed a worn piece with water in it, like a football; he estimated it might have been one-fourth to one-half inch deep, and placed it three feet from the counter, which was some distance removed from the spot where plaintiff said she

fell. Zinno did not tell any of the store employees of the accident, did not attempt to assist plaintiff, merely gave her his card and left.

Three non-medical witnesses testified on behalf of defendant. Emerich W. Edel, the store manager since 1945, stated that the floor at the time of the accident was covered with a heavy hard surface laid in squares and having a marbleized effect. He said that he went by the front counter eight to ten times a day and had never seen the hole described by plaintiff and Zinno, or any other such hole. He emphasized that one of his duties was checking the floors "because people drop pieces of paper, etc. . . . ." The testimony of Frank J. Keller, the associate manager, was substantially the same as Edel's. Keller stated that his duties took him by the front doors of the store at least five times a day, and that he had never seen any holes there. The third witness, Leroy Turner, worked as a porter for Woolworth's and was on duty the day of the accident. He was the only employee who recalled the accident and remembered the plaintiff. He was sweeping when a customer informed him that plaintiff had fallen. In response to the question, "Were there any holes or depressions within seven feet west of the State Street door at the time you saw Mrs. Waring?", he replied "No." He said that when he first saw her she was lying in the vestibule of the store, where the door opens and shuts, rather than near the front counter. "One leg was in the vestibule," he said, "and one was in the store."

█ To help resolve the irreconcilable conflict in the evidence as to the cause of the accident, defendant called Fay Turner, the investigator, as its witness. His written report, prepared shortly after the accident and about eight years previous to the trial of the case, was marked for identification. The court, however, refused to permit Turner to testify because of his

11

statement that he had no independent recollection of the interview with plaintiff prior to refreshing his recollection by reading the proffered exhibit. After reading it, he began to testify, but was then interrupted and asked whether the interview took place in a house, a point not covered in the report; he was unable to answer that question. The court thereupon refused to allow him to continue, on the theory that he had no recollection of the interview. "He doesn't remember the woman he took it from, doesn't remember where he took it," the court stated. However, the court's statement was in error, because Turner explicitly said that he did recognize plaintiff; and it may well be that, if he had been permitted to continue, he would have recalled details of the 1951 interview, even though during his first few minutes on the witness stand he did not recollect the building in which the interview took place. In any event, we think the document should have been received in evidence under the doctrine known as past recollection recorded, even though he was not permitted to testify on the theory that he had no recollection of the interview. In Ettelson v. Metropolitan Life Ins. Co., 164 F2d 660 (3d Cir 1947), an action on life-insurance policies, the plaintiffs contended that the trial court erred in admitting into evidence an attending physician's record containing statements made to him by the insured six months after the policies were issued. The record was verified and adopted by the physician, who was called as a witness; under such circumstances, it was held on appeal, the record became, when offered by the insurer, a present evidentiary statement by the physician which, to the extent that its contents were relevant, was admissible in the discretion of the trial judge.

Schoborg v. United States, 264 F 1 (6th Cir 1920), was an action under the Espionage Act. There the em-

12

ployees of a detective agency, who by means of a dictograph listened to conversations in which defendants participated, testified that they had no independent recollection in detail of the statements made, but that the notes made at the time and the reports made each day were correct. On appeal it was held that the notes and reports were admissible, the credit to be given them being for the jury.

People v. Greenspawn, 346 Ill 484, 179 NE 98 (1931), involved an indictment for the crime of forgery. There plaintiff in error sought to prove his alibi by introducing into evidence the testimony or the memorandum of a roentgenologist. The court said (p. 493):

> "The language of the witness [the roentgenologist] leaves it doubtful whether he intended to say that he had no recollection of the event or whether he had any recollection of the event, or whether it was of the date, only, that he had no recollection, or that it was of the identity of the defendant; but if it is construed that he had no recollection except that he made a true record of whatever did occur, then that record is entitled to be admitted in evidence. If, on the other hand, he had, as he stated in one part of his examination, a distinct recollection because of the circumstances surrounding the particular instance, then his testimony on the question should have been received and the record was not admissible."

In the case of Koch v. Pearson, 219 Ill App 468, 472 (1920), the court enunciated the rule as to past recollection recorded as follows:

> "Where a witness testifies that he made a written report or memorandum of the occurrence at or near the time of its happening, but that upon examination of it he has no present recollection

13

of the matters therein stated except that he knows that it is correct, then such report or memorandum is admissible in evidence. [Citing as authority textbooks and cases from various jurisdictions.]"

An exhaustive discussion of the rule is found in 3 Wigmore, Evidence §§ 754, 800 (3d ed 1940).

The record shows that after the court refused to permit Turner to testify on the basis of his personal recollection, defense counsel proceeded to try to lay a foundation under the doctrine of past recollection recorded. It appeared that before Turner was cut off by the ruling of the court he had stated that he recognized plaintiff, that the document was true and correct at the time it was prepared, that it was prepared in the regular course of his business, and that it was written on the date that it bore. Nevertheless, the court refused to receive the document in evidence, stating that the witness "doesn't remember the woman, didn't remember the place—nothing else at all other than recognizing his own handwriting." This ruling was made rather peremptorily, before defense counsel had a proper opportunity to lay a foundation either under the doctrine of present recollection refreshed or past recollection recorded. The central issue in the case is the cause of the accident, and it became the principal function of the jury to assess the credibility of plaintiff. To enable them to do this, Turner's written statement constituted an important piece of evidence; to exclude it was extremely damaging to defendant's case.

In this connection it is urged by plaintiff that the document was not offered in evidence. Although defendant's counsel did not make a formal offer, it is apparent that he was urging the court to receive Turner's record. This is indicated by counsel's statement, "Your Honor, I think the document is admissible. He

14

has refreshed his recollection," and the court's refusal to admit it, with the comment, "I know, but he doesn't remember the woman, didn't remember the place—nothing else at all other than recognizing his own handwriting."

As a further ground for reversal it is urged that the argument of plaintiff's counsel to the jury was prejudicial and calculated to enhance the amount of the verdict. Since the case will in all likelihood be retried, we make no comment on this phase except to suggest that upon retrial plaintiff's counsel confine himself to the record and omit any extraneous material.

Lastly, it is urged that the verdict was excessive, but in the view we take we need not pass on this question.

For the reasons indicated, the judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Judgment reversed, and cause remanded for a new trial.

BRYANT and BURKE, JJ., concur.