Anna L. Phelps, as Special Administratrix of the Estate of Paul A. Phelps, Deceased, Plaintiff-Appellee, v. Elgin, Joliet and Eastern Railway Company, a Corporation, Defendant, William O. Arnold, Richard F. Peterson, Edward A. Bogucki and John H. Bickley, Jr., Respondents-Appellants.

Gen. No. 48,581.

First District, First Division.
August 27, 1962.
Rehearing denied September 13, 1962.

L. Louis Karton, of Chicago, for respondents-appellants.

William H. DeParcq and Edmund C. Maurer, of Chicago (Charles Alan Wright, of Austin, Texas, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The instant suit was an action under the Federal Employers' Liability Act to recover damages for the death of Paul A. Phelps. A judgment was rendered against Elgin, Joliet & Eastern Railway for $100,000 and part of the proceeds were deposited with the clerk of the court. Plaintiff, the widow, filed a petition in these proceedings to adjudicate the attorney's lien of respondents and after a hearing, judgment was entered against the claim of respondents for attorney's fees and respondents bring this appeal.

The facts, as they appear from the pleadings, are undisputed. Paul A. Phelps was killed on December 13, 1958, while employed by the defendant railroad company in Gary, Indiana. On December 15, 1958, Anna L. Phelps, his widow, executed a written agreement employing respondent William O. Arnold * "to prosecute or settle all claims for damage against E. J. & E. Railroad . . ." and agreed to pay one-third "of whatever may be recovered from said claim either by suit, settlement or in any other manner." On February

---

* Arnold is associated, in the practice of law, with the other named respondents.

6, 1959, Mrs. Phelps was named special administratrix of the estate of Paul Phelps and in that capacity she employed William H. DeParcq, a different counsel, to file suit on behalf of herself and the five minor children of decedent, and a settlement was thereafter negotiated in the sum of $100.000. Later, the widow, as plaintiff administratrix, petitioned the court to adjudicate respondents' claim alleging that respondents had served the railway company with a notice of attorney's lien and she denied she was indebted to them in any sum whatever.

The respondents' answer asserted their claim for fees and attached a copy of the agreement referred to above, alleging they duly served the railway company with a notice of attorney's lien (a copy of which was attached) on December 18, 1958. It was further alleged that upon being retained by Mrs. Phelps, respondents immediately investigated the matter and were at all times ready and willing to perform their agreement, but were prevented from so doing by the actions of the plaintiff who disregarded her agreement and employed other attorneys. The answer prayed that the matter be set down for a hearing and claimed judgment for $33,333.33 in accordance with the agreement.

Subsequently, plaintiff filed a motion to strike and for judgment, asserting that the contract was void upon its face inasmuch as it was signed by her in her individual capacity without authority or as a representative of the estate and was void under the Federal Employers' Liability Act. After a hearing on the pleadings, the court sustained the motion to strike and entered judgment against respondents, stating that the obligation of Mrs. Phelps was an individual one and not binding on the proceeds of a suit brought by her in her capacity as special administratrix.

There is no dispute between the litigants over whether the attorney's lien was properly filed, Haj v. Amer-

ican Bottling Co., 261 Ill 362, 103 NE 1000, or that the Illinois law is to be applied. Peresipka v. Elgin, J. & E. Ry. Co., 231 F2d 268. Nor is it disputed that the Federal Employers' Liability Act gives the right of action to personal representatives only. American R. R. Co. of Porto Rico v. Birch, 224 US 547; Pecos & Northern Ry. Co. v. Rosenbloom, 240 US 439. The parties do disagree over whether the appointment of Mrs. Phelps as special administratrix on February 6, 1959, relates back to the date of her husband's death thereby validating the employment of respondents.

■ Illinois, along with a majority of jurisdictions in the United States, recognizes the doctrine of relation-back. In Globe Acc. Ins. Co., v. Gerisch, 163 Ill 625, 45 NE 563, the Supreme Court held that:

"Under [the doctrine of relation] the grant of letters of administration related back to the date of the intestate's death, and validated all acts which came within the scope of an administrator's authority, and which were, in their nature, beneficial to the estate." 163 Ill at 631.

In Faubel v. Michigan Boulevard Bldg. Co., 278 Ill App 159, 167, this court stated that the grant of letters relates back and "validates all acts of the executrix which are otherwise lawful and proper." The relation-back doctrine has also been applied in Mason v. Papadopulos, 12 Ill App2d 140, 138 NE2d 821, and In re Swartz, 218 Ill App 449.

Corpus Juris Secundum explains this to be the majority rule in the United States.

"When letters testamentary or of administration are issued they relate back to the time of decedent's death and validate the acts of the representative done in the interim which are otherwise lawful and proper or necessary to the proper administration

50

of the estate, the doctrine being controlled to some extent by the equities in the case." 33 CJS, Executors and Administrators, 151(b), p 1113, citing Faubel v. Michigan Blvd. Bldg. Co., 278 Ill App 159.

■ There can be no doubt that having an attorney investigate the facts leading to decedent's death in preparation to filing claim is in the interest of all the beneficiaries. It is entirely lawful and proper for the person who will be administratrix and who is the natural guardian of her children to retain an attorney for this purpose. Thus, the doctrine of relation-back should be applied here to validate Mrs. Phelps' employment of respondents prior to the date she was named administratrix.

Petitioner relies strongly on the case of Tuohy v. Chicago & J. E. Ry. Co., 200 Ill App 446. It is true that the Appellate Court for the second district, in an abstract opinion, stated that, when the contract for contingent attorney's fees was made by the individual and later not ratified by him as administrator, the claim was against the individual and not the estate. However, it does not appear that the doctrine of relation-back is mentioned in the opinion and we can only assume the point was not raised. Also, the facts show that the mailing of the lien notice was an issue. The court went on to say that "[a] notice to establish a statutory lien, where the manner of service is not pointed out by the Statute, requires a personal service of such notice," citing Haj v. American Bottling Co., 261 Ill 362, 103 NE 1000, and the opinion concludes with "[i]t is clear, under the decision in the Haj case, supra, that a personal service on appellee, of the notice, was necessary, as a condition precedent to the establishment of a lien, if the petitioner had one." It is significant that in the Tuohy opinion no mention is made of Globe

51

Acc. Ins. Co. v. Gerisch, 163 Ill 625, 45 NE 563. In fact, the only case mentioned in the opinion is the Haj decision, a case that is concerned only with proper service of the attorney's lien.

■ Appellee contends that upholding the attorney's lien, by applying the relation-back doctrine, will not be beneficial to the estate in that it will reduce the recovery of the five minor children of decedent. As we view the case this will not occur. Enforcing the attorney's lien will not enlarge the total attorneys' fees paid. Rather, the fee will be divided among the two sets of attorneys according to the effort expended by each in obtaining the settlement.

■ A lien filed pursuant to the attorney's lien law, Ill Rev Stats, Ch 13, par 14, is filed on the party defendant, here the railroad. It notifies the defendant of the attorney's claim and prevents the defendant from making a settlement in disregard of the lien. If, as here, the statutory procedure has been followed, it then becomes the duty of the trial court to adjudicate the rights of the parties. Here, the trial court should have heard evidence concerning the services rendered by each set of attorneys hired by Mrs. Phelps. The fees should then be allocated accordingly. In Schlake v. Lumbermens Mut. Cas. Co., 25 Ill App2d 194, 166 NE2d 622, several attorneys each claimed a percentage of the plaintiff's recovery. We pointed out that the law will not allow the entire recovery to be consumed by attorneys' fees. We said there:

> "The only question before the trial court in the instant suit was an adjudication of the claims for attorneys' liens. It was the court's duty to allocate to each of the attorneys that portion of [the recovery] to which they were entitled, in order to ascertain the amount of fees that would be due [each attorney]. . . . We are of the opinion that a reasonable fee in this case is to be determined,

like other fact questions, by the weight of the evidence." 25 Ill App2d at 197–8.

The same rule should be applied here. The trial court should hear evidence concerning the services rendered by each set of attorneys and allocate the fee accordingly.

Reversed and remanded with directions.

Reversed and remanded.

MURPHY, J., concurs.

ENGLISH, J., specially concurring:

I agree with the majority's application of the principle of relation-back, and its consequent determination that there are, in this case, a valid contract and a valid attorney's lien. I, therefore, concur in the conclusion that the trial court's order striking respondent's answer should be reversed and the cause remanded. I disagree, however, as to the directions for further proceedings upon remandment.

Since plaintiff's petition denied the existence of a valid contract with Arnold, it cannot be said with certainty that the cause is at issue on the pleadings. In my opinion, plaintiff should first be given an opportunity to reply to respondent's answer. Issues of fact not now presented may then be raised and require solution before the ultimate adjudication of respondent's fee.

I also consider it beyond the proper scope of this opinion for us to direct any determination of DeParcq's fee. The record is silent as to the contractual arrangements between plaintiff and DeParcq other than that she retained him to prosecute the claim against the railroad. Whether she undertook to pay him a fixed fee, a contingent fee, or any fee at all, is not before the court, and I believe it would therefore be inappro-

priate for the court to allocate to DeParcq any of the funds now on deposit with the Clerk. Nor has DeParcq requested either this court or the trial court to make any such award to him.

The only ultimate issue to be determined (so far as we can now see in the absence of a reply) is the amount of the fee, if any, to which Arnold is entitled. Such a proceeding is not an equitable action but a statutory one (Berkemeier v. Dormuralt Motor Sales, 263 Ill App 211, 215), and should not, as I understand it, involve any kind of equitable "allocation" of fees between attorneys based upon evidence of services rendered.

If it should be decided by the trial court (on the pleadings or after resolution of any factual dispute which might arise) that Arnold, after complying with the statute in the giving of notice, etc., was discharged by plaintiff without cause, then he would be entitled to enforcement of his lien even though DeParcq, alone, procured the settlement. (Goldberg v. Perlmutter, 308 Ill App 84, 31 NE2d 333.) That we appear to agree upon, but I differ with the majority as to the extent of the right secured by the lien.

As stated in the Goldberg case at page 88:

> "A client unquestionably has the right to discharge his attorney at will and engage another, but where he exercises such right without good cause and thus renders it impossible for such first attorney to perform his contract of employment he is bound to compensate the first attorney *in accordance with his contract with him.*" (Emphasis supplied.)

I believe it has been the law in Illinois, and in most of the states, that an attorney discharged without his fault from rendering services under a contingent fee contract is entitled to recover on his lien as for full

54

performance. (Caruso v. Pelling, 271 Ill App 318; Goldberg v. Perlmutter, 308 Ill App 84, 31 NE2d 333; 136 ALR 231; 4 Williston, Contracts, § 1029.)

In the Caruso case this court entered judgment in favor of the original attorney for the full one-third of the recovery, pursuant to his contract and lien, despite the fact that, as here, another attorney had accomplished the settlement. At pages 323–324 it was said:

"Nor is there any merit in the contention of defendants that petitioner was bound by Rule 43 of the probate court of Cook county which provides that in any claims for personal injuries in case of settlement without suit, not more than 25 per cent of the amount recovered will be allowed for attorney's fees. *Nor is there any merit in the further contention that petitioner was entitled to receive only the reasonable value of the services which he rendered,* and that there was no evidence on this question. Petitioner was not in the probate court and if the defendants were desirous of securing a settlement for a less amount by reducing petitioner's fee, they should not have settled the matter behind petitioner's back. They are in no position to invoke the rule of the probate court. Nor are the defendants in a position to contend that petitioner should receive only the reasonable value of the services rendered because the Attorney's Lien Act provides that the attorney shall have a lien 'for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such attorneys rendered or to be rendered.' *The amount of the fee having been agreed upon between the petitioner and his client, petitioner is*

55

 

*entitled to the amount specified in his contract,* of which the defendants were notified." (Emphasis supplied.)

In the Goldberg case the first attorney *rendered no services* under his contract; *all* the work was done by the second attorney; and yet this court enforced the original attorney's lien to the full extent of the one-third agreement. This court said at pages 90–91:

". . . Respondent's attorney's lien accrued and attached to the minor's claim from the time it was placed in his hands for prosecution and it was never lost to him, notwithstanding the fact that the parents of the minor made it impossible for him to institute suit to enforce the claim and not-withstanding the further fact that such suit was instituted by another attorney. *So long as respondent was properly employed and his attorney's lien had legally accrued and attached to the claim, such lien is none the less valid* because the interests of a minor are involved or *because respondent actually rendered no services in the prosecution of the claim when he was prevented from so doing without fault on his part.* In our opinion his lien remains in full force and effect and is just as enforceable under the statute as if he had instituted the suit and effected the settlement of the minor's claim." (Emphasis supplied.)

It appears to me that these decisions declare a principle inconsistent with an allocation based on services, or on quantum meruit. So far from requiring proof of services to support recovery, our Supreme Court has held that compliance with the lien statute effectuated an assignment of a share in the cause of action. Under such a doctrine there is, of course, no place for any allocation. In Baker v. Baker, 258 Ill 418, 101 NE 587, the court stated at page 421:

56

". . . By serving the notice claiming a lien *the attorney in effect becomes a joint claimant* with his client in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, *and to the extent of the amount of his fee has the same interest in such proceeds, judgment or decree as his client* and is entitled to his pro rata share thereof. In short, when the notice claiming a lien is served on the defendant or debtor under this statute it has the effect of an assignment of an interest in any judgment or decree that may be rendered or in the proceeds of any settlement that may be made by the client, and is such an assignment that the defendant or debtor is bound to respect. This creates a new and a substantial right in favor of the attorney and divests the client of substantial rights that he theretofore possessed." (Emphasis supplied.)

This holding in the Baker case, declaring the attorney to be, in effect, an assignee claimant to the extent of his contract, has been cited with approval in numerous decisions, including: Mid-City Trust & Sav. Bank v. Chicago, 292 Ill App 471, 475, 11 NE2d 617; McKeown v. Pridmore, 310 Ill App 634, 645, 35 NE2d 376; Smith v. Louisville & N. R. Co., 313 Ill App 396, 404, 40 NE2d 539; Scott v. New York, C. & St. L. R. Co., 159 F2d 618, 620; and more recently in Peresipka v. Elgin, J. & E. Ry. Co., 7 Cir., 1956, 231 F2d 268.

In the latter case the facts were remarkably similar to those of the case at bar. The original contract attorney in Illinois was discharged without cause after he had rendered only minor services. Another attorney filed suit in Indiana and prosecuted the claim to a judgment for $25,000. Settlement was agreed upon and a petition was filed to determine the rights, if any, of the Illinois attorney. He answered claiming a full

57

one-third of the settlement proceeds under his contract. A conflict of laws question as to whether Indiana or Illinois law would apply was settled by the trial court in favor of Indiana law (under which the original attorney would admittedly receive nothing), but reversed by the Court of Appeals.

After finding Illinois law applicable, the reviewing court cited the Baker case as declarative of the Illinois law and quoted the portion of that opinion quoted above. The court then cited Goldberg and other cases, and said further at page 273:

> "Thus, under the Illinois Attorney's Lien Act as construed by the courts of that state, intervenor became a joint claimant and by assignment acquired a one-third interest in any judgment rendered in favor of plaintiff or in the proceeds thereof. *It would thus appear that he acquired a right or interest the same as if plaintiff had made an assignment to him of a one-third* interest in any other property or property rights. (Emphasis supplied.)
>
> . . . . . . .
>
> ". . . Cases are cited which hold that a client has a right to discharge his attorney at any stage of a proceeding and that under certain circumstances the attorney's right to recover fees is limited to quantum meruit. We need not cite or discuss such cases because they did not involve the rights of an attorney under the Illinois Attorney's Lien Act and are clearly inapplicable."

To uphold, as we do, the Arnold contract and lien, and then to limit his recovery thereunder to payment for the minimal services actually rendered, is to make of the Lien Act a weak reed, indeed, highly ineffectual in the accomplishment of its declared purpose. It is my conviction that the vice of such a result would have far-reaching consequences, as it might reasonably be

taken to mean that lawyers could, with practical impunity, permit themselves to be retained extensively by clients already under contract to other lawyers in the personal injury field. I say "practical impunity" because I believe that the principal barrier to such undesirable activities up to the present time may well have been the lien-protected contract for the original attorney's full contingent fee. With this decision, as I see it, no lawyer will ever be certain of any contract protection, to the full extent of his agreed contingent fee, until after judgment, and perhaps not even then. If this were to become the situation in such cases, it could hardly fail to affect adversely the quality of professional services rendered to the public in this important segment of litigation.

We have not been briefed by either party on the question of the proper amount of the fee if the lien were declared valid, because that issue had not been reached by the trial court. The point is too important, in my opinion, to be determined in this manner at this time.