Robert Sawchyn, a Minor, by John Sawchyn, His Father and Next Friend, and John Sawchyn, Individually, Plaintiffs-Appellants, v. Clarence Samlow, Defendant-Appellee.

**Gen. No. 52,265.**

First District, Fourth Division.

April 16, 1969.

Rehearing denied May 19, 1969.

Anton W. Makar, of Chicago, for appellants.

Joseph A. Bailey, of Chicago (J. Stanley Clark, of counsel), for appellee.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiffs brought suit to recover damages occasioned by the alleged negligence of defendant in the operation of his motor vehicle. Plaintiffs' complaint was in two counts. Count I was to recover personal injuries suffered by Robert Sawchyn (hereinafter referred to as plaintiff), and in Count II John Sawchyn, plaintiff's father, sought to recover for property damage to his automobile. After a bench trial the court entered judgment for defendant. Plaintiff presents the following issues for review: that the trial court, erred in finding for defendant against the manifest weight of the evidence, improperly ruled on objections, deprived plaintiffs of a fair trial and failed to find defendant guilty of negligence as a matter of law.

The collision occurred in the northwest quadrant of the uncontrolled intersection of Melrose and Melvina Streets in the City of Chicago. Melrose runs east and west; Melvina runs north and south. Each is 30 feet wide and located in a residential area. The intervening

corner had shrubs and trees, with heavy and low hanging branches. Photographs reveal that this tended to obscure and interfere with a motorist's view.

Plaintiff, then 16 years of age, was operating his father's motor vehicle in a westerly direction on Melrose Avenue. At the time of the collision plaintiff had about eight months' driving experience totaling approximately 800 miles. Defendant was operating his motor vehicle southbound on Melvina Avenue, thus approaching the intersection from plaintiff's right. It was a sunny, dry day. There were two impacts. The first involved the left front portion of defendant's motor vehicle with the right front portion of plaintiff's motor vehicle. The second impact involved the left rear portion of defendant's motor vehicle with the right rear portion of plaintiff's motor vehicle.

Plaintiff's vehicle came to rest 5 or 6 feet south of the center of Melrose, facing west with its rear portion blocking the west crosswalk. It had traveled 16 to 20 feet from the location of the first impact. Defendant's vehicle came to rest facing a westerly direction on Melrose, with the rear of the vehicle still in the northwest quadrant, 1 or 2 feet north of the center of Melrose Avenue. Defendant's vehicle was the only one that made any skid marks. The skid marks started just west of the center of Melvina and north of the north crosswalk of the intersection, continued south into the intersection to within a few feet north of the center of Melrose and then curved sharply westward for about 5 or 6 feet. A police officer testified the skid marks measured 50 feet in total length. There is no evidence as to whether the measurement was made from the rear wheels or front wheels of defendant's vehicle or, as would seem likely from the photograph, from a combination of front and rear wheels. Thirteen photographs depicting views of the intersection, streets, skid marks and the vehicles were placed in

evidence. There were no eyewitnesses to the collision other than plaintiff and defendant.

Plaintiff testified that as he approached the intersection he slowed down when he was 50 feet from the east curb of Melvina, to a speed of 15 to 20 miles per hour. He was able to see only 50 to 60 feet north on Melvina, because there was a tree in front of the house on the corner which blocked his view.

Plaintiff testified further that he continued watching in the same direction until he could see between the tree and the house; he then could see the west side of the Melvina pavement for about 150 feet north of the north line of Melrose. He observed no vehicles either parked or in motion on the west side of Melvina. At this time, the front of his vehicle was about 30 feet east of the east curb line of Melvina. Plaintiff looked to his left, that is south, then straight ahead, and began to accelerate through the intersection.

Plaintiff testified that as the front of his vehicle crossed the midline of Melvina he suddenly heard a screeching of brakes and saw out of the side of his eye a black flash that came up from his right side and the impact of the vehicles occurred. Plaintiff testified his vehicle at the moment of impact was moving between 20 to 25 miles per hour and that he never saw defendant's vehicle until he heard the screech of brakes.

Defendant testified he was going south on Melvina at about 20 to 25 miles per hour. When he was about 100 feet from the intersection he glanced left and right and did not observe any traffic. When he came within 50 or 60 feet of the intersection he again looked left and right and did not observe any traffic. As the front of his vehicle approached the north line of the north sidewalk on Melrose he looked to his left and saw plaintiff's vehicle approaching at approximately 40 miles per hour, at which moment his own vehicle was moving at about 15 miles per hour. Defendant observed the plaintiff at this mo-

ment was 90 to 80 feet from defendant's vehicle at which time defendant testified he applied his brakes and brought his vehicle to a stop just a fraction of a second before the impact.

Plaintiff charges that the trial court erred in its concept of the law; that skid marks are some evidence of speed when coupled with other evidence of speed, otherwise they are meaningless and should not be considered. Plaintiff argues that the trial court's misconception of the law on this point was manifested during plaintiff's argument, when the court stated:

". . . skid marks by themselves are insufficient to establish speed without expert testimony."

Plaintiff's argument is that he was not endeavoring to establish a fixed rate of speed in violation of any speed laws, but whether defendant at the time of the occurrence was operating his vehicle at a speed greater than was reasonable and proper under existing traffic conditions. Plaintiff argues that 50 feet of skid marks is evidence of defendant's negligence in traveling at a speed that was greater than reasonable and proper and should be accepted as such by the trier of fact without an expert.

Plaintiff argues that the court's concept of the law was tantamount to directing a verdict for defendant. We do not agree with plaintiff. On the motion to vacate and for a new trial, the court in a colloquy with plaintiff's counsel said:

The Court: "I want you to know right now, my finding, based on the fact that I find the 50 feet of skid marks, to me is not evidence of excessive speed. Now, that was my finding on that score. . . .

". . . Just remember this, your 50 feet came into evidence, and if you have a jury, a jury would have determined whether 50 feet of skid marks was evidence of excessive speed, and in the same way, I

367

came to a conclusion. As a matter of fact, to me it was not evidence of speed, excessive speed, let's say that."

The foregoing recitation by the trial court obviates the argument that the trial court determined skid mark evidence in this case was meaningless.

Plaintiff complains that the trial judge considered technical evidence predicated upon the court's personal knowledge. Plaintiff makes recourse to his post-trial arguments, when another colloquy between the court and plaintiff's counsel reveals the following:

> Plaintiff's counsel: ". . . If the Court does not want to say that 50 feet of skid marks is evidence of excessive speed, if the Court says that is immaterial, then I cite the defendant in this case did not have adequate brakes, otherwise he would have been able to stop his car within that 50 feet."

> The Court: "I think you ought to have it in the record here: See, if you don't have brakes, good brakes, it is impossible to lock them up.

> "Now, let that stand in there. This is my personal observation over a period of years driving race cars, what I have observed about brakes. That is common knowledge too among people, mechanics and various people."

Resort to plaintiff's closing argument reveals that plaintiff's counsel had said:

> "Now, your Honor knows very well from your own experience that at 15 miles to an hour you are going to bring your car to a stop much sooner than that."

Plaintiff invited the court to consider its personal experience in the operation of a motor vehicle. The court responded:

"I do not so know. That isn't my experience. Do you know what causes a skid? When you lock up all your brakes your car goes into a skid."

Plaintiff complains that the trial court's interruptions during arguments before the finding and at the post-trial proceedings deprived plaintiff of a fair, impartial trial and he was deprived of an orderly, well preserved argument because of interruptions by the trial court which disrupted plaintiff's train of thought and logical presentation of his argument. Plaintiff earnestly urges that the court's conduct destroyed the effect of his argument and should require a reversal. We find that most, if not all, of the points raised by plaintiff as error, are products of colloquies between plaintiff's counsel and the trial court. The trial transcript does not reveal any merit to plaintiff's contentions under this point.

■ Plaintiffs argue that the trial court disregarded defendant's testimony in not finding defendant guilty of negligence as a matter of law. Under this point plaintiffs contend defendant's testimony reveals that he failed to keep a proper and sufficient lookout, and after danger to plaintiff was imminent failed to deviate from the collision course.

■ ■ The defendant's testimony did not establish as a matter of law that after he discovered the dangerous situation he could have done any more than applying his brakes, as he did, to attempt to avoid the impending collision. As mentioned, the 50 feet of skid marks included 5 or 6 feet at almost a right angle at the point of collision, indicating either that this change in course was accomplished by defendant as an evasive maneuver, or that the change in direction was brought about by the collision, thus reducing the length of the skid marks on which the plaintiff bases his argument from 50 feet to 44 or 45 feet if all the marks were made by the front wheels, or to about 34 feet if they were made by both front and rear wheels. Whether or not defendant took proper precau-

369

tions after he discovered plaintiff's vehicle under the principle of discovered peril and failure to act is a factual question. Rothacher v. Jones, 38 Ill App2d 19, 186 NE2d 157 (1962). Likewise, neither did defendant's testimony establish as a matter of law that defendant failed to keep a proper lookout. Whether or not a proper lookout was maintained is a factual question. Moss v. Wagner, 27 Ill2d 551, 190 NE2d 305 (1963).

█ █ Plaintiff also urges that the finding in favor of the defendant was against the manifest weight of the evidence. We hold it was not. The Appellate Court should not substitute its judgment for that of the trial judge who heard the witnesses where there is sufficient evidence upon which the trial judge could base his finding and his finding is not against the manifest weight of the evidence. Busch v. United States Fire Ins. Co., 66 Ill App2d 435, 213 NE2d 584 (1966), Schulenburg v. Signatrol, Inc., 37 Ill2d 352, 226 NE2d 624 (1967).

We hold that the trial court properly entered judgment for defendant.

Judgment affirmed.

ENGLISH and McNAMARA, JJ., concur.