IN RE ESTATE OF MARY A. ELWELL, Deceased, (FRANCES M. GOLEC, Administratrix,) Petitioner-Appellee, *v.* STERLING SAVINGS AND LOAN ASSOCIATION, *et al.,* Respondents-Appellants.

(No. 54044;

First District—August 27, 1971.

S.M. Del Principe, of Chicago, (R. L. Benjamin, of counsel,) for appellants.

James C. Byrne, of Chicago, for appellees.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order, based on findings in the Probate Division, in a citation proceeding, that certain funds on deposit in the respondent savings and loan association were assets of the Estate. The co-respondent S. M. Del Principe has brought this appeal.

The citation proceeding was instituted on September 24, 1968, by the petition of the administrator seeking to declare funds on deposit with the Sterling Savings & Loan Association in an account, then in the name of Respondent S. M. Del Principe, to be the property of the Estate. Hearing was held on February 7, 1969, and the court ordered that the funds in the Sterling Savings & Loan were assets of the estate (except for a small portion thereof) and at present the funds, plus interest, are being retained by the Savings & Loan for further order of that court pending this appeal. The final order of the court below was dated March 10, 1969, Nunc Pro Tunc as of February 7, 1969.

The evidence shows that the decedent died intestate on October 10, 1964, in the City of Chicago. The Circuit Court of Cook County, Probate Division, issued Letters of Administration to Frances M. Golec, the adopted daughter of the decedent. The petitioner presented evidence that on the date of death there was on deposit in the Sterling Savings & Loan, in account number 21052, the sum of $9,039.54 in the name of decedent alone. The petitioner further, primarily through ledger sheets and other savings and loan records, produced evidence that the funds in account number 21052, referred to hereafter as the second account, were previously held by the decedent in joint tenancy with the present

administrator. This account number 19317, referred to hereafter as the first account, had been closed by the transfer of all of its funds on September 1, 1964, to the second account. Then on October 12, 1964, two days after the death of the decedent, the funds in the second account, some $9,039.54, were transferred into account number 21431, referred to hereinafter as the third account. This third account was in the name of S. M. Del Principe, POD (payable on death) Frances Monica Elwell, nee Golec the present administrator). The record indicates that there are proper documents, *i.e.* account card ledger sheet and withdrawal order, for each of the transactions and accounts which took the $9,039.54 from the first account to the third account except for the withdrawal order for the transaction from the second account to the third account, the transfer that occurred two days after the death of the decedent. The second account card indicated that only the decedent had the privilege of withdrawing funds. At the conclusion of this evidence the petitioner rested her case whereupon the Respondent Del Principe moved to dismiss the petition or for a finding in favor of the defendants because of petitioner's failure to make a prima facie case. The respondent's motion was denied.

The court then proceeded to hear the appellant-respondent's evidence.

The respondent called the petitioner to testify, testified himself, and called the only other person to testify, a lawyer who had worked for the Savings & Loan at the time of the transfers but was no longer so employed.

The petitioner testified that she was decedent's only child, that in the fall of 1964 she was 18 years old. She said that up until August 28, 1964, she had lived alone with her mother and had attended school. On August 28th, she left home and got married on September 4, 1964, without her mother's consent or knowledge. She did not inform her mother of her whereabouts and the marriage until about two weeks after the marriage. During the petitioner's absence from home the decedent had reported her missing to the authorities and had sought police aid in locating her.

The testimony of the respondent discloses that he is a lawyer having practiced in Chicago since 1935; that he is a brother of the decedent and that the two lived as neighbors. The decedent paid rent to the respondent and that the respondent had his own keys to the decedent's home; that during decedent's hospitalization respondent was in the residence almost daily to feed her dog. Also it was during hospitalization that respondent cashed decedent's payroll checks, purchased things for decedent, paid bills, and obtained for the decedent what decedent desired from her apartment. The respondent visited the decedent regularly while she was hospitalized.

458

The decedent's final illness started in February, 1964, when she went to the hospital for a slipped disc and stayed until April. She returned to the hospital in the middle of August, 1964, and stayed about a month until September, 1964. The treatment was again for a slipped disc. On October 6, 1964, the decedent returned once again to the hospital and the diagnosis was changed to spinal cancer. She was operated on October 7, 1964, and died on Saturday, October 10, 1964.

The respondent testified about the events from August 29, 1964, until his sister's death. He visited her regularly at the hospital and on August 29, 1964, he had the first conversation about her savings account. On August 31, 1964, decedent instructed the respondent to put his name on the account and to take the petitioner's name off because the decedent did not know what had happened to the petitioner. Respondent then went to the Savings and Loan, got a withdrawal slip which he took to the decedent for her signature and then had the account number one closed and account number two opened. The respondent then took the bankbook to the hospital to give to his sister. The respondent testified that the decedent looked at it and "threw the bankbook at me and said, 'This is not what I wanted to do. I wanted it in your name. I'm giving it to you. It's yours'". This conversation occurred on September 1, 1964. The decedent then requested respondent to obtain another withdrawal slip which he did and the decedent then signed it. Subsequently, in two or three days, the decedent inquired of the respondent if he had done as she instructed and he informed her he had. The two never again discussed the pass book or the account.

On Monday, October 12, 1964, respondent presented the withdrawal slip and book for the second account and closed it by transferring all funds to the third account.

Mr. Feldman was subpoenaed and testified that he was the former attorney for Sterling Savings and Loan Association, and no longer represented it. He further testified that he had a conversation with the respondent on May 22, 1965, seven months after the death of Mary A. Elwell, wherein the respondent told him that he, (the respondent), did not claim the money in the account as his personal funds, that he put the money in his name because he and the decedent had been afraid that, if Frances obtained the funds, her then husband would see to it that she didn't have the money.

The testimony was concluded by petitioner testifying that two weeks after her mother's death, while in the respondent's apartment, the respondent had led her to believe that the money was still intact in an account in her mother's name and had asked her for permission to put those funds in an account in his name.

The issues presented to this court for review are thus. Did the trial court hold correctly in ruling that petitioner had presented a prima facie case of ownership in the Estate of the funds in the Savings and Loan? Are the findings of the trial court contrary to the evidence adduced in the citation hearing? And finally, did the court err in including, as part of the court's order, interest on the funds originally on deposit in the Savings and Loan?

■■ The trial court was correct in its ruling that petitioner had presented a *prima facie* case at the end of petitioner's testimony. There was on the date of decedent's demise in existence a savings account *in* her name alone. There was no evidence of how the money was transferred two days after her demise to the account of another. The evidence was clear that on the date of decedent's death she owned the assets of the account. As the trial court aptly stated "the burden of proof now shifts to you (the respondent) to establish how, what circumstances, to escape liability, this account was transferred two days after the death of the decedent. It obviously wasn't transferred by the holder of the account". While the cases cited by the appellant do not support the appellant's assertion that petitioner failed to make a prima facie case, we have taken upon ourselves to clarify this point. The cases cited by the appellee also shed little light but speak in terms of delivery and donative intent which we do not feel are relevant to this point. The question stated in more succinct terms is, Does evidence of a savings account in decedent's name alone on the date of death present a prima facie case that the account belonged to the decedent? We cannot fail but to hold that it does. The depository of the monies, in this case the Savings and Loan, was indebted to the depositor to the amount of the deposit until withdrawn. At the date of death, there had been no withdrawal. The depositor, the decedent, certainly did not make the withdrawal. There was sufficient evidence to present a prima facie case. *Laudretto v. First Trust & Savings Bank,* 333 Ill. 442, 154 N.E. 836.

■■■ The second allegation of error is that the finding of the trial court is contrary to the evidence. It is for us to once again state that the findings of the trial court will not be disturbed unless the findings are against the manifest weight of the evidence. They will not be disturbed by this Court. The evidence in the case supports the findings. *Manchester Ins. & Indemnity Co. v. Strom,* 122 Ill.App.2d 183, 258 N.E.2d 150, *Sauchyn v. Samslow,* 109 Ill.App.2d 363, 248 N.E.2d 763, *Johnson v. Fischer,* 108 Ill.App.2d 433, 247 N.E.2d 805.

■■ Appellant contends that since the trial court refused to assess costs against respondent that the court improperly included the interest which the account had earned as property of the Estate. Since the account was

460

determined to be an asset of the Estate, the interest which it had earned was likewise property of the Estate.

Judgment affirmed.

JONES and MORAN, JJ., concur.